**STERLINGWEAR OF BOSTON, INC., Vi-Mil, Inc., Jerome Danin & Frank Fredella, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 454–86C.

United States Claims Court.

March 17, 1987.

As Corrected March 24, 1987.

Anthony M. Fredella, Somerville, Mass., attorney of record for plaintiffs.

Carol N. Park-Conroy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. Statement of the Case

This opinion is the third in a series of opinions which have issued in this case stemming from the plaintiffs' now seven-month old challenge to the award of a government contract premised on IFB DLA–100–85–B–1327 for the manufacture of women's overcoats ordered by the U.S.

Navy.[1] This latest opinion addresses the government's December 31, 1986 converted motion for summary judgment seeking to dismiss the plaintiffs' complaint on the ground that plaintiffs have been legally debarred[2] by the Defense Logistics Agency (DLA) of the Department of Defense and are therefore precluded from any award of the subject contract (FAR § 9.405(a) and (b)). Previously, on August 13, 1986, following a two-day hearing on July 31 and August 1, 1986, the court preliminarily enjoined the DLA from issuing an award on the subject contract to any bidder other than the plaintiffs, pending a decision on plaintiffs' debarment. *Sterlingwear v. United States*, 10 Cl.Ct. 644 (1986). That opinion also ordered the defendant to report to the court as soon as any determination was reached by DLA on the then proposed debarment of the plaintiffs noticed on July 3, 1986.

On November 18, 1986, the court was informed by defendant that all named plaintiffs in this action had received notice of their debarment by DLA. Whereupon, in addition to their initial challenges to DLA's decisions to deny them the award of the subject contract, and to even initiate the debarment proceeding, plaintiffs now aver that the actual debarment proceedings were defective in that they were denied fundamental due process. This is so because they were not accorded an opportunity to cross-examine the individual who provided the government's main source of information in the debarment proceedings regarding genuine factual issues material to the propriety of the debarment. See plaintiffs' Memorandum filed December 5, 1986.

In its opposition to this later challenge, the government responded with Defendant's Motion To Dismiss filed December 12, 1986, arguing therein that the court lacked jurisdiction to review *any* portion of the debarment proceedings, and that as a consequence the plaintiffs' relief, if any, lies only in the United States District Court. In any event, the government concluded, plaintiffs had been accorded all of the process to which they were due under the appropriate DOD debarment regulations. Shortly thereafter, on December 19, 1986, there was filed in this court—Defendant's Motion To Vacate Pending Injunction And For Expedited Consideration.

In an opinion dated January 16, 1987,[3] the court dismissed the defendant's challenge to the court's continuing jurisdiction to decide the merits of this case and to review the issue—whether the manner by which the debarment proceedings were conducted, in effect, caused plaintiffs' bid to have been treated unfairly. *Sterlingwear v. United States*, 11 Cl.Ct. 517 (1987). Relative to the merits, the court also honored the defendant's request to convert its motion to dismiss to one for summary judgment (*see* RUSCC 56). Thereafter, plaintiffs filed an opposition to the defendant's converted motion for summary judgment on January 29, 1987. That opposition further elaborated on the plaintiffs' claim that they were denied due process before the DLA in its conduct of the debarment proceeding, and further sought to point out contested findings in the record which support their entitlement to examine the government witness who supplied the oper-

---

1. On July 22, 1986, plaintiffs filed their complaint, accompanied by applications for a temporary restraining order and a preliminary and a permanent injunction, all alleging that the DLA had denied them the award of the subject contract without legal cause and contrary to law. An order issued on July 23, 1986, following a hearing the previous day, denying plaintiffs' application for a temporary restraining order.

2. FAR § 9.402 sets forth agency policy regarding debarment as follows: "(a) Agencies shall ... award contracts to ... responsible contractors only. Debarment and suspension are dis-

cretionary actions that ... are appropriate means to effectuate this policy. (b) The serious nature of debarment ... requires that [this] sanction be imposed only in the public interest for the Government's protection and *not for purposes of punishment*. [A]nd only for the causes and in accordance with the procedures set forth in this subpart."

3. Said opinion followed oral argument on December 31, 1986, which addressed Defendant's Motion To Dismiss dated December 12, 1986, and Defendant's Motion To Vacate Pending Injunction And For Expedited Consideration filed December 19, 1986.

ative evidence relied on by the debarring official. Defendant replied thereto on February 10, 1987, arguing that, given this court's "strictly limited" scope of review, sufficient evidence was contained in the administrative record to require affirmance of the debarring official's determination. More importantly, defendant avers that *de novo* review is not permitted, citing to *Florida Power & Light Company v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985), and in turn denied that —(i) there was a conspiracy to debar plaintiffs and (ii) it improperly prevented plaintiffs from examining the contracting officer, Ms. Patricia Panzera.

Prior to any decision by the court on defendant's converted motion for summary judgment, on February 26, 1987, plaintiffs filed a Motion To Permit Additional Evidence which had recently come to their attention, and which was allegedly *not* available to them at any time during the debarment proceedings. That evidence, appended to plaintiffs' motion, consisted of copies of six (6) criminal indictments, involving eight individuals and two artificial entities, which were returned on February 3, 1987, by a grand jury convened in the Eastern District of Pennsylvania.[4] One or more of those ten named defendants were charged with counts of wire fraud, false statements, bribery, mail fraud, racketeering, aiding and abetting, and conspiracy to commit the same. Most, if not all, of the charges *appear* to relate to the alleged offering of unauthorized information and/or influence by certain top present and/or former officials of the DLA in connection with the solicitation and award of government contracts, which contracts were for military apparel. One or more, if not each, indictment related to alleged illegal activities which occurred, at least in part, over the time period during which plaintiffs' bid was being considered and rejected by the defendant's contracting officer, Patricia Panzera. The name "Pat

Panzera" appears in Count Five of Indictment # 87–00028, at page 19, *NOT* as a defendant, but *only* as follows:

"2. On or about January 22, 1986, in the Eastern District of Pennsylvania and elsewhere,

JOSEPH W. CHINNICI

MAJOR COAT COMPANY, INC.

LEO LAMER and

JOSEPH CAGNO

for the purpose of executing the scheme and artifice, and attempting to do so, did knowingly cause to be delivered by mail a letter, dated January 22, 1986, from JOSEPH W. CHINNICI, addressed to the Defense Personnel Support Center, 2800 South 20th Street, Philadelphia, Pa. 19101 (Att. Ms. Pat Panzera, Contracting Officer), enclosing a delivery schedule for contract number DLA 100–86–C–0412."

In addition, plaintiffs allege in their accompanying motion that one, if not more, of the IFBs referred to in the indictments was an IFB as to which they were the low bidder, but had their bid rejected, like in the situation at bar, based on the contracting officer's finding of non-responsibility.[5] In substance, plaintiffs aver that said evidence has "a direct bearing on the [debarment] issues before the court" as regards to whether in said proceedings their bid was fully and fairly considered.

Defendant objected to the court allowing plaintiffs' motion to permit such additional evidence, arguing that the court's review in this case is strictly limited to the administrative record before the DLA, which record does not contain the recently returned indictments. It would, therefore, argues defendant, be inappropriate for this court to receive such evidence *de novo*. In addition, while conceding that said evidence is, indeed, *newly discovered*, on or after February 3, 1987, defendant nevertheless challenges the materiality of this newly

---

**4.** Pursuant to the court's order of March 9, 1987, true executed copies of the six indictments were filed with this court by plaintiffs on March 10, 1987.

**5.** At oral argument, plaintiffs' counsel admitted, however, that the IFB DLA–100–85–B–1327, in issue here at bar, is nowhere referred to in any of the six indictments.

discovered evidence to any of the issues raised by plaintiffs' debarment proceedings. In order to resolve the genuine conflict over the materiality and the relevance of the proposed new evidence, the court ordered an expedited hearing on the matter, which was held on Wednesday, March 4, 1987. That hearing resulted in a further explication of the parties' positions, and confirmed for the court that the matter of the proper utilization of plaintiffs' new evidence was clearly not an issue on which the parties would be able to agree.

Despite defendant's strong protestations, the court, after considerable and vexing reflection, is of the opinion that sound discretion warrants the granting of plaintiffs' motion. We believe, given the unique facts and circumstances of this case, *infra*, that it is appropriate for this court to review plaintiffs' newly discovered evidence, *not on its merits*, but as an additional viable basis to support our finding, discussed *infra*, that this matter must be remanded to the DLA for a full and complete fact-finding hearing to clearly determine whether during said debarment proceedings plaintiffs' bid was *fully and fairly* treated. Consequently, we deny the defendant's motion for summary judgment, and remand pursuant to RUSCC 60.1, for such a hearing, which hearing shall include the opportunity for the plaintiffs to examine, accompanied by stenographic record, the contracting officer, Patricia Panzera, and *any other witness* who can present evidence, either oral or otherwise, which impacts upon any of the facts relied upon by the debarring official. Plaintiffs' debarment is hereby voided, with instructions that the DLA may only reinstate said debarment in conformity with its regulations, appropriate due process proceedings, and this opinion.

## II. *Discussion*

### A. *Introduction*

■ The task with which we are confronted by this case, as with all pre-award cases, is to determine whether the government has violated the implied contract to fully and honestly consider a plaintiff-contractor's bid. *See Sterlingwear*, 11 Cl.Ct. at 519, *citing United States v. Grimberg*, 702 F.2d 1362 (Fed.Cir.1983); *CACI, Inc.— Federal v. United States*, 719 F.2d 1567 (Fed.Cir.1983); *Electro-Methods, Inc. v. United States*, 728 F.2d 1471 (Fed.Cir. 1984); *ATL, Inc. v. United States*, 736 F.2d 677 (Fed.Cir.1984); *National Forge Co. v. United States*, 779 F.2d 665 (Fed.Cir.1985); *NKF Engineering, Inc. v. United States*, 805 F.2d 372, 375–76 (Fed.Cir.1986). While, at first blush, this is a relatively easy concept to grasp, the unique and peculiar facts upon which contractors often rely to establish claims of unfair or arbitrary treatment are frequently highly varied and/or at times illusory. So it has been with this case. As a general matter, the focus of defendant's motion for summary judgment is for this court to review the plaintiffs' debarment proceeding and determine whether the decision of the debarring official was either arbitrary, capricious, unsupported by substantial evidence, or contrary to law based on the administrative record. 5 U.S.C. §§ 704, 706 (1982); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Heinemann v. United States*, 796 F.2d 451, 454–55 (Fed.Cir.1986); *Hilo Coast Processing Co. v. United States*, 7 Cl.Ct. 175 (1985). Plaintiffs have, on the other hand, alleged a material procedural error which they believe has denied them basic and fundamental due process in the treatment of their bid. Our task, against this background, therefore, is to determine whether any such material procedural error did indeed occur, and if so, then to review the debarring official's findings to ascertain whether the alleged error had a material impact on, or was harmless to, the debarring official's ultimate decision. *Harp v. Dept. of Army*, 791 F.2d 161 (Fed. Cir.1986); *Handy v. U.S. Postal Service*, 754 F.2d 335 (Fed.Cir.1985).

It is worthy of note that this task has been significantly exacerbated, however, by the plaintiffs' eleventh hour allegation that several present and/or former officials

of the DLA, *who allegedly ultimately supervised the contract (and IFB) in issue,* have been recently indicted for allegedly engaging, in effect, in the precise type of broad conspiracy relative to *other* contracts that the plaintiffs now allege was the cause of them not being awarded the contract in issue in *this* case. That is to say, plaintiffs aver that—"there has been a deliberate attempt to find some means to prevent ... Sterlingwear from receiving awards. The action of the individuals in DLA in attempting to accomplish this goal amounts to a conspiracy." Pltfs' Opposition Brief at 3. Clearly, *if* the indicted officials had been indicted for acts associated with the subject contract at bar (*and there is no such showing*), even defendant has conceded that in such circumstances the entire matter should be remanded to the DLA for a new debarment proceeding to assess the quantum of prejudice to the plaintiffs' bid. While this new evidence (*i.e.,* the returned indictments) may be newly discovered (and defendant so conceded), any connection to the implied-in-fact contract and IFB in issue is at this posture, in a word, tangentially circumstantial at best. The seriousness of the alleged criminal activity averred therein at that level, however, despite the peripheral circumstantiality *at this posture,* does nevertheless heighten a certain urgency which we cannot so lightly brush aside without causing a thorough inquiry to be conducted.

Accordingly, our complete task is viewed not only as addressing the impact of any alleged procedural errors, but to assess whether, in addition thereto, plaintiffs' newly discovered evidence, coupled with any such errors, also warrants a remand and a debarment *rehearing* before the DLA. Sound discretion perceives that these inquiries are indeed necessary, for were plaintiffs' bid prejudiced by any procedural error in the debarment proceeding, and were plaintiffs' bid also prejudiced by a lack of opportunity for the debarring offi-

cial to have considered newly discovered material evidence, the plaintiffs' implied contract to have their bid fully and honestly considered would have been violated. For the reasons discussed *infra,* we believe that in combination, these two factors, *i.e.,* the procedural errors and the newly discovered evidence—do warrant the granting of a rehearing below.

### B. *Procedural Errors by the Debarring Official*

#### 1. *The Errors Themselves*

##### a. *Failure to Comply with 48 C.F.R. § 9.406–3(b)(2)*

Federal Acquisition Regulation (FAR) § 9.406–3 governs the procedures to be followed by the debarring official in conducting the debarment proceeding. As a general proposition, these regulations were established, *inter alia,* to "afford the contractor ... an opportunity to submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment." § 9.406–3(b)(1). The opportunity for the contractor to present any argument, information, and evidence is, however, clearly *not* limitless. The regulations provide a regime where the absence of genuine factual disputes and the requisite informality of the standard administrative proceeding provide some necessary constraint.[6] To that end, the right to a full fact finding hearing is not absolute, but is tempered by a rule that only in those cases where there exists a "dispute over facts material to the proposed debarment," is such a right guaranteed. § 9.406–3(b)(2). The foregoing standard is obviously patterned after, and somewhat analogous to, Rule 56 of the Federal Rules of Civil Procedure (as well as RUSCC 56) governing the right to litigation by summary disposition as opposed to a full trial on the merits.

---

**6.** Section 9.406–3(b) provides in pertinent part as follows: "*Decision making process.* (1) Agencies shall establish procedures governing the debarment decisionmaking process that are as informal as is practicable, *consistent with principles of fundamental fairness.*" (emphasis added).

Also analogous to the summary judgment procedure, FAR § 9.406–3(b)(2) envisions that the decision—whether to proceed with a full fact finding hearing given the existing genuine issues of material fact, is one which is made *only after* the contractor has had an opportunity to present the evidence it deems necessary to raise such genuine issues of material fact, and the appropriate official has had an opportunity to review the same. To wit, § 9.406–3(b)(2) and (2)(i) provide that:

> (2) In actions not based upon a conviction or judgment, *if* it is found that the contractor's submission in opposition raises a genuine dispute over facts material to the proposed debarment, agencies shall also—
>
> > (i) Afford the contractor an opportunity to appear with counsel, submit documentary evidence, present witnesses, and confront any person the agency presents;

(emphasis added).

■ Turning now to the conduct of plaintiffs' debarment proceeding, it appears to the court and it so finds that the above quoted language of FAR § 9.406–3(b)(2) and (2)(i) was violated in at least one, if not two, material respects. First, it appears from the administrative record that the debarring official may have made his FAR § 9.406–3 decision not to hold a full fact-finding proceeding *prior* to the time plaintiffs submitted their September 17, 1986 written opposition to the proposed debarment (Administrative Record (AR) at Exhibit O). In that connection, consider the following sequence of events: On August 8, 1986, plaintiffs' counsel wrote to the DLA seeking a full fact-finding hearing, and "request[ed] that the agency have available for questions [*sic*] Ms. Patricia Panzera, Contracting Officer." AR at Exhibit I. On August 12, 1986, DLA responded "to your [plaintiffs'] letter in which you request a hearing"; at that time it also granted plaintiffs' request for August 22, 1986, but it characterized the gathering as a *meeting* and not a hearing. AR at Exhibit J.

The record of that August 22, 1986 meeting (*i.e.*, handwritten notes), however, makes no mention of Ms. Panzera being present, let alone being allowed to testify, as plaintiffs had previously requested. AR at Exhibit K. What *was* recorded, on the other hand, in the debarring official's *own* remonstration of that August 22, 1986 meeting is a finding to the effect that based on the discussions had *at that August 22, 1986 meeting*—"there was no disagreement as to the basic facts surrounding the contracts or the nature and extent of the obligations of the parties under those contracts." Debarment Decision at 4 and 5. Hence, assuming the foregoing statement to be the debarring official's FAR § 9.406–3 decision, *i.e.*, finding no material facts to be in issue upon which he relied to deny plaintiffs the opportunity to examine Ms. Panzera (which denial also appears to have been effected at the August 22, 1986 meeting), said determination could reasonably be said to have been made *prior* to the time that the plaintiffs submitted their written opposition on September 17, 1986, almost one month later. *See* AR at Exhibit O. Given the foregoing, we find that such a procedure was clearly in contravention of the requirements of § 9.406–3(b)(2) quoted *supra*.

Second, we further find that the debarring official also erred in failing to acknowledge several material issues of fact raised by plaintiffs' written submission dated and filed on or about September 17, 1986. This is not surprising inasmuch as that submission was made, as noted *supra*, *after* the apparent August 22, 1986 decision *not* to hold a fact finding hearing in which Ms. Panzera, the contracting officer, could testify. In evidence of the foregoing, we cite here only to the most glaring examples. On page 6 of the debarment decision, the official states:

> ... Contractors raise three board objections to their debarment. * * * The second is that their performance on the cited contracts did not constitute a willful failure to perform....

In disputing this quite obvious question of fact, which represented a *main* ground for the plaintiffs' debarment, plaintiffs made two factual contentions. We quote again from the debarring decision:

> Contractors maintain that the Government contracting officer prevailed upon Vi-Mil to expedite delivery of the coats and because of this, the 17,000 coats were cut prior to first article inspection. Also, a Government Quality Assurance Representative (QAR) was resident in the plant during the period of time in question, and Contractors claim he should have known the cloth was being cut, yet he made no effort to prevent Vi-Mil from cutting the material.

Debarment Decision at 7. These references to the contractor's arguments are found in the plaintiffs' September 18, 1986 submission to the DLA at page 5.

With a little elaboration, the materiality and disputed nature of these facts are readily apparent. Vi-Mil, while a separate corporation, has been deemed under DLA regulations to be the predecessor of Sterlingwear in terms of operation, personnel and ownership. Given this alleged indicia of "commonality" between Vi-Mil and Sterlingwear, DLA attributed to Sterlingwear, for purposes of debarment, all the past contract defaults of Vi-Mil. Hence, Sterlingwear, in its defense against debarment before the DLA (because it had no prior contract performance history), argued the lack of any merit to the *prior* contract defaults of Vi-Mil. The passage quoted directly above is just such an attempt by Sterlingwear, before the debarring official, to raise material issues of fact, requiring resolution by fact finding, of the existence of willfulness by Vi-Mil in defaulting on contract # 0481. Importantly, the default on contract # 0481 is argued by plaintiffs to have been the main source of Vi-Mil's financial problems out of which stemmed the subsequent defaults on the other eight contracts cited in the debarment decision. (This theory relative to the origin of plaintiff Vi-Mil's financial problems is itself another series of disputed facts ignored by the debarring official. *See infra.*).

With this background in mind, we note that relative to the issue of expedited delivery on contract # 0481, plaintiffs' argument was based on oral representations by the contracting officer, and the contracting officer's representative. In response thereto, the debarring official, in his decision debarring the plaintiffs on November[ 14, 1986 at page 15, blandly states that:

> Beyond a mere assertion, Contractors have presented no evidence of a request by the Government to accelerate deliveries on 0481.

However, the foregoing is simply not the case. This is so because in the administrative record certified to the court as being that which was before the debarring official, containing that evidence which was relied on by him in debarring the plaintiffs, at Exhibit M, there is the transcript of the evidentiary proceedings which took place before this court during the consideration of plaintiffs' application for a preliminary injunction. During that proceeding, plaintiff Jerome Danin testified at length, under oath, about receiving "a request to expedite delivery on contract 0481." AR at Exhibit M (pages 110–111; 148; 155–156).

Mr. Danin named the official, a Major Van Buskirk, who allegedly made the request to expedite. *Id.* Mr. Danin made reference to "communication[s] with Major Van Buskirk and others in his command" regarding expedited delivery on contract # 0481. Further, Mr. Danin specifically testified that "[t]he thrust of the conversation[s] was how badly their (DLA's) supply position was, and could we do everything within our power to expedite delivery and to move this along, which was not an uncommon practice." *Id.* Consistent therewith, Mr. Danin avers that Vi-Mil responded by "cutting ... 17,000 garments," which cutting was done in order to "enable[ ] us (Sterlingwear) to accelerate delivery." *Id.* Lastly, Mr. Danin submitted a follow-up letter written by Major Van Buskirk, which reiterated, in more detail, the nature of the request for expedited delivery. Plaintiffs' Exhibit 8. That letter stated:

The following sizes are in critical supply, I am requesting you to give priority shipment to these sizes without disruption to the delivery schedule for the remaining sizes....

■ The debarring official, faced with this evidence, should have recognized that, while circumstantial for the most part, this evidence was nonetheless certainly sufficient to raise an issue of fact. The unresolved nature of this issue is particularly troublesome wherein the debarring official, in an effort to counter the testimony of the plaintiffs, recites his reliance on a written admonishment by the QAR resident in plaintiffs' plant, which written admonishment appears *no where* in the administrative record. While we make no substantive finding as to the validity of the plaintiffs' claim that they were requested to expedite delivery, the *critical* inquiry before the debarring official, for purposes of § 9.406–3, was whether plaintiffs were entitled to a fact finding hearing for having merely raised the question of expedited delivery as a "dispute over [a] fact[ ] material to the proposed debarment." § 9.406–3. We believe, and find, that the debarring official erred, as a matter of law, in failing to order a fact finding proceeding, pursuant to § 9.406–3, on the issue of expedited delivery re contract # 0481.

A second area of disputed fact regarding the alleged willfulness of the plaintiffs' failure to perform on contract # 0481, as noted *supra,* relates to facts surrounding a claim that—the QAR resident in plaintiffs' plant knew, or should have known, of the pre-first article approved cutting of the government furnished material. The debarring official dismissed this contention summarily by stating:

Contractors have also failed to present any evidence that the Government QAR knew or should have known that the cloth was being prematurely cut at the Vi-Mil plant, yet made no effort to prevent such.

Debarment Decision at 16. Once again, however, this is simply not the case. Turning, as before, to the evidence presented by the plaintiffs at the preliminary injunction hearing, the sworn testimony of Mr. Danin is directly on point. Mr. Danin clearly identified the QAR plaintiffs' contend knew or should have known of the pre-first article approval cutting, a Mr. Frank Hagerty. AR at Exhibit M (pages 81–82; 156). Mr. Danin explained that Hagerty's presence at the plant included complete office space, at which he was present *every day* during "the performance of first article garments." *Id.* Moreover, Mr. Danin placed Mr. Hagerty in the plant "constantly check[ing] in-process, ... our quality control program, ... production ... and ... bringing to our attention anything that he might find," during the performance of first article garments. *Id.*

Based on this evidence placing the QAR in the plant, physically checking production, during the time pre-first article approval cutting was taking place, the debarring official should have inquired further. While again circumstantial in nature, this evidence clearly leads to a reasonably logical inference that the QAR saw the pre-first article approval cutting. Thereafter, according to Mr. Danin's testimony, nothing, prior to first article rejection, regarding said cutting was brought to his attention. While dismissing plaintiffs' contention as meritless, the debarring official had no direct evidence given by the QAR himself to overcome the reasonable inferences deducible from plaintiffs' evidence. This circumstance, apparently material, also creates a genuine issue of fact.

The debarring official cites, in contradiction of the plaintiffs' testimony, to the same August 11, 1984 letter relied on above, which letter was *not* before him as part of the administrative record. Inasmuch as the question of plaintiffs' willfulness in allegedly violating contract # 0481 is material to the debarment, and is clearly impacted upon by the circumstances which may have transpired at the plaintiffs' plant at the time of the alleged pre-first article approval cutting, the debarring official should have recognized the existence of a "dispute over [a] fact[ ] material to the

proposed debarment." § 9.406–3. We believe the debarring official erred, as a matter of law, in failing to order a fact finding hearing, pursuant to § 9.406–3, on the issue of the QAR's knowledge and/or acquiescence, in the alleged pre-first article approval cutting of government furnished material on contract # 0481.

Two additional areas which reflect material factual disputes in the administrative record are also worthy of a brief mention. These relate to the plaintiffs' allegation of impossibility of performance on contract # 0481, regarding the willfulness issue, after the 17,000 coats were incorrectly cut, and the "domino" impact of subsequent contract defaults the plaintiffs experienced after contract # 0481 was terminated. Plaintiffs aver that the foregoing stems from the fact that the government informed plaintiffs that it would make offsets from progress payments on *other* contracts held by Vi-Mil to recoup its losses. On the first issue, that of the alleged impossibility of performance on contract # 0481, the plaintiffs vigorously disputed the following allegation contained in the notice of proposed debarment:

> Vi-Mil apparently attempted various alterations to bring the already produced coats into conformity, but failed to find a method of doing so at what Vi-Mil considered to be a reasonable cost.

Notice of Proposed Debarment, Plaintiffs' Exhibit 1. As with the other contested issues cited *supra,* plaintiff Jerome Danin testified in detail before this court that it was *not cost* that was a bar to performance, but the lack of any *physical means* of reworking the incorrectly cut coats which prompted Vi-Mil to request a waiver on contract # 0481, and later to ultimately not perform. AR at Exhibit M (pages 84–88; 113–116).

The debarring official, in his attempt to meet the foregoing, did little more than summarize these evidentiary assertions by Mr. Danin, emphasizing that in any event the problems on contract # 0481 were not the only basis for debarment. As we have explained in detail *supra,* we find these

obvious attempts by the debarring official to ignore or summarily dismiss contested material issues of fact to be contrary to his regulatory obligation pursuant to § 9.406–3. Consequently, we again find that the debarring official erred, as a matter of law, in failing to order a fact finding hearing to resolve the impossibility of performance and willfulness questions on contract # 0481 as alleged by plaintiffs.

Lastly, as mentioned *supra,* there is also the "domino" like scenario of subsequent defaults on eight DLA contracts alleged by plaintiffs to be due to the government's threat of offsetting losses on contract # 0481 against progress payments on several of those other eight defaulted contracts. What was at issue was the government's threat, *i.e.,* the believability of that threat from the plaintiffs' perception, and whether that threat caused them to forego work on any of the eight subsequently defaulted contracts relied on by the debarring official. Again, the record adduced before this court, which was also before the debarring official, is replete with testimony of plaintiff Jerome Danin, in mitigation of the willfulness issue, on how the default on contract # 0481 negatively impacted upon, and substantially caused the default on the other eight contracts. Mr. Danin relies on the "domino" theory postulated *supra.* *See* AR at Exhibit M (pages 90–98).

Instead of recognizing the relevance of this testimony to the plaintiffs' motivation in breaching the other eight contracts, the debarring official continued to emphasize that plaintiffs could have prevented the offsets, and did nothing to protect themselves against said offsets. The critical inquiry, however, revealed by the evidence, and contained in the debarment regulations, is that of *willful* failure to perform. § 9.406–2(b)(1). Plaintiffs' evidence, which was not rebutted factually by the debarring official, addressed this point, and raised, at a minimum, a "dispute over [a] fact[ ] material to the proposed debarment." § 9.406–3. In failing to make this finding, and thereby subsequently failing to hold the necessary fact finding proceed-

ing, we believe the debarring official again erred as a matter of law.

### 2. *Prejudice to the Plaintiffs Flowing From the Violations of FAR § 9.406-3 Procedures*

■ It is now well settled law in the Federal Circuit that "denial of a procedural right at the agency level, even one that [is] statutory, [is] to be reviewed under the harmful error standard." *Harp v. Dept. of Army,* 791 F.2d 161, 163 (Fed.Cir.1986), *citing Handy v. U.S. Postal Service,* 754 F.2d 335 (Fed.Cir.1985); *Olympia USA, Inc. v. United States,* 6 Cl.Ct. 550 (1984). What such an analysis implies for this case is that substantial prejudice to the plaintiff must therefore be found to flow from the various procedural errors committed by the debarring official, *supra.* In particular, it is not so much that each error individually must *ipso facto* cause substantial prejudice to warrant a remand to the agency level. Rather, it is sufficient if all the errors, taken collectively, and in conjunction with one another, support a finding that had things been procedurally correct, there is a reasonable likelihood that the debarring official would have reached a different decision more favorable to the plaintiffs. We believe that on the basis of the legal errors found *supra,* substantial prejudice exists to compel a remand to the DLA *in this case.*

As a general matter, the first procedural error committed by the debarring official standing alone might probably have been, under normal circumstances, deemed harmless. The fact that the debarring official may have determined not to hold a fact finding hearing pursuant to § 9.406-3, *prior* to receiving the contractor's written submission, is a rather technical mistake. Thereafter, however, if a careful review of the plaintiffs' submission had been made

by the debarring official, any error could have, in all likelihood, been rectified later by affording plaintiffs a § 9.406-3(b)(2) hearing. But it is patently evident that no such careful review of all the evidence by the debarring official *ever* occurred, and, moreover, no such hearing was held.

■ The debarring official failed to recognize obvious material issues of fact prior to receiving the contractor's submission, and he also failed to reconsider his earlier denial of the plaintiffs' request for a fact finding hearing subsequent to receiving the plaintiffs' written submission and a copy of the critical testimony given before this court. Against this background, because we believe that there were sufficient material questions of fact raised to require a fact finding proceeding under § 9.406-3(b)(2), plaintiffs were indeed prejudiced by not being afforded the opportunity to fully present their case consistent with applicable regulations. In short, we find that a decision based on less than all of the *material* facts, such as here, is a decision which is *prima facie* prejudicial.[7]

Equally important is the fact that not only were there left unresolved issues of fact, but those issues which the plaintiffs raised were indeed material. Plaintiffs' theory of the case, in seeking to overcome the averred bases proffered for debarment (§ 9.406-2(b)), centers around the failure of contract # 0481. In that regard, plaintiffs claim that although they made an error in cutting the government furnished material, the extensive pre-first article approval cutting, which is relied on by the debarring official to show willful breach, was in effect done both at the request of, and with the knowledge and acquiescence of, the DLA. Thereafter, argue plaintiffs, when the government defaulted plaintiffs on con-

---

7. While we have chosen to base our primary finding of error by the debarring official on § 9.406-3, it is equally clear that the action of the debarring official, in failing to examine and consider all of the evidence contained in the transcript before this court, was beyond cavil arbitrary. That the debarring official *ignored,* as opposed to *excluded* or *distinguished,* the evidence presented in the hearing before this

court is manifestly apparent in the two quotations from the debarment decision alleging *no evidence was presented,* cited *supra.* An administrative decision that fails to consider all relevant evidence is the essence of arbitrariness. *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823-24. *See also Florida Power & Light Co.,* 105 S.Ct. at 1607.

tract # 0481, the threat of offset against progress payments on several other contracts left plaintiffs with sufficiently poor cashflow that they were unable to complete or even begin the later defaulted contracts.

■ Taking these facts most favorable to the plaintiffs, it would appear that plaintiffs raised sufficient genuine factual issues to require the debarring official to hold a § 9.406–3(b)(2) hearing on all factual issues raised under § 9.406–2(b) and (c). Such is appropriate inasmuch as said issues formed the substantive regulatory basis for debarment of all named plaintiffs. *See* Debarment Decision at 9. We believe that the failure to hold such a hearing is sufficient prejudice to find that the violations of § 9.406–3, cited *supra*, were not harmless, but were clearly harmful.[8] Despite the already protracted nature of this case, the foregoing finding of prejudice requires that this matter be remanded for a full and complete fact finding proceeding as envisioned by § 9.406–3(b)(2)(i) and (ii).[9] *See* 28 U.S.C. § 1491(a)(2); RUSCC 60.1; *Williams v. Washington Metropolitan Area Transit Comm'n*, 415 F.2d 922, 939–40 (D.C.Cir.1968), and cases cited therein ("For even where agency action must be set aside as invalid, ... a reviewing court will ordinarily remand to enable the agency to enter a new order after remedying the defects that vitiated the original action."). *Florida Power & Light Co.*, 105 S.Ct. at 1607.

## C. *Plaintiffs' Motion To Permit Additional Evidence*

■ This case, as noted *supra*, is a record review case. As such, our inquiry is limited to those facts, and that evidence, which was before the debarring official at the administrative level. We are not permitted, therefore, to make findings of fact *de novo*, but rather only to pass on those findings of fact made by the debarring official. As a general rule, therefore, this court does not possess the authority to take additional evidence, as plaintiffs' motion suggests. *See Florida Power & Light Co.*, 105 S.Ct. at 1607. There is, however, one exception to this rule which has been recognized by both this court and our predecessor court. That is, where a party has been able to demonstrate that the proposed evidence is newly discovered or was *unavailable* to it at the time of the administrative appeals, it has been allowed into the record. *Brousseau v. United States*, 640 F.2d 1235, 1242, 226 Ct.Cl. 199 (1981); *Leefer v. United States*, 215 Ct.Cl. 1061 (1978); *Cohen v. United States*, 212 Ct.Cl. 568 (1977); *Gallo v. United States*, 8 Cl.Ct. 550 (1985).

As noted *supra*, the evidence plaintiffs wish to submit to this court consists of six indictments returned by the grand jury in the Eastern District of Pennsylvania. At oral argument on the foregoing plaintiffs' motion, defendant candidly conceded that this proposed evidence is clearly newly discovered. Defendant has *strenuously* protested, however, the admissibility of this

---

8. Defendant attempts to construe plaintiffs' request for a fact finding hearing as one strictly limited to examining the contracting officer, Patricia Panzera. We do not construe plaintiffs' request so narrowly, nor do we believe that it is improper for this court (in determining whether plaintiffs' bid was *fully* and *fairly* treated) to review the entire administrative record and make findings with respect to all errors encountered therein whether specifically enumerated by the parties or not. Thus, we do find erroneous the government's assertion that the words— "confront any person the agency presents" in § 9.406–3(b)(2)(i)—refer strictly to persons who give *verbal* testimony and not to persons who provide documentary evidence which is relied on by the debarring official, and which is contained in the administrative record.

9. From our discussion in the text, we further emphasize that the debarring official also erred, given the existence of numerous genuine issues of material fact, in finding that the agency had carried its own burden, that of proving debarment by a preponderance of the evidence. *See* § 9.406–3(d)(3), which states: "(3) In any action in which the proposed debarment is not based upon a conviction or civil judgment, the cause for debarment *must* be established by a preponderance of the evidence." (emphasis added). Naturally, such a showing would require the agency to rebut any evidence by the plaintiffs tending to show lack of willful failure to perform, or lack of improper conduct in the performance of government contracts.

evidence on the ground of materiality and relevance. That is to say, defendant contends that the plaintiffs have failed to show any material connection between any individual or entity named in any of the indictments and the contract in issue in this case. For a number of reasons, we disagree with the defendant and find this newly discovered evidence to be sufficiently material to warrant its admission into the record to be considered with all other relevant evidence by the debarring official on remand.

As noted *supra,* the indictments named ten defendants and charged multiple counts of wire fraud, false statements, bribery, mail fraud, racketeering, aiding and abetting, and conspiracy to commit the same. Most, if not all, charges alleged appear to involve the offering of information and/or influence by certain top present and/or former officials of the DLA in connection with the solicitation and award of certain unspecified government contracts, which contracts, like that in issue here, were apparently for the procurement of military apparel. Some of the offenses alleged in the indictments occurred, for the most part, over the precise period during which plaintiffs' bid was solicited, submitted, opened, declared to be low, and then rejected on the grounds of non-responsibility. While subject IFB DLA–100–85–B–1327 is *not* referred to in any of the indictments, two officials named therein, Frank Coccia and Donald Sherry, *may* have had some connections with issues material to plaintiffs' case. This is probable because Frank Coccia, during the relevant period of plaintiffs' bid, is alleged to have been the highest civilian official of the DLA responsible for military clothing contracts, and, therefore, had direct authority over plaintiffs' contracting officer, and ultimate authority for plaintiffs' treatment in the bidding process. Donald Sherry, even more importantly, is alleged to have been one of plaintiffs' contracting officers on the highly contested contract # 0481 discussed in great detail *supra.*

■ In addition, and beyond the foregoing, we have also noted that the name

"Ms. Pat Panzera, Contracting Officer" appears in the indictment of Joseph Chinnici, *et al.* We emphasize, however, that Ms. Panzera is clearly *not* indicted or otherwise charged therein. Nevertheless, the fact that she may have been perhaps used as an *innocent* pawn in the implementation of the overall alleged conspiracy does, we believe, warrant some heightened concern for this case. In sum, the fact of the matter is that these significant details, which are recounted in the indictments, do raise a serious question as to a possible connection between the alleged illegal activity cited therein, and issues material to one or more of the contracts named in the plaintiffs' debarment decision, as well as to the contract in issue. In making this observation, we are particularly mindful of how the secrecy of federal grand jury criminal proceedings, and the revelation of minimal evidence in criminal indictments, are facts which must be found to mitigate against the weight of the burden plaintiffs must carry to show sufficient materiality and relevance. Rule 6(e), Federal Rules of Criminal Procedure. On the basis of all of the foregoing considerations, therefore, we believe that burden has been adequately met.

Pursuant to the authorities cited *supra,* we note that the predecessor court, when faced with situations of newly discovered evidence, sometimes suggested it would be appropriate for that court's trial division to hold a *de novo* fact finding trial. *See Leefer,* 215 Ct.Cl. at 1061; *Cohen,* 212 Ct.Cl. at 568. Inasmuch as this court has assumed all jurisdiction of the predecessor court's trial division, we can only surmise that a *de novo* trial, under the circumstances of this case, might be within our power, were it clearly the only appropriate means of receiving plaintiffs' newly discovered evidence. However, given that we are already remanding to the DLA for a new debarment proceeding to resolve the previously identified issues of fact, it is clearly not appropriate for this court to bifurcate this proceeding and go forward simultaneously with an independent fact finding hearing here. Accordingly, we envision

that any new hearing relative to plaintiffs' debarment will also encompass the presentation of evidence, and the examination of all witnesses, relating to *any matters material and relevant* to the plaintiffs' proposed debarment.

### III. *Conclusion*

It is axiomatic that the ultimate decision, as to the propriety to debar, is a discretionary decision of the debarring agency. FAR § 9.406–2. When made according to law and regulations, said decision is entitled to great deference. In short, this court, in such circumstance, is not empowered to substitute its substantive judgment for that of the agency. Moreover, we are not unmindful that "only in extremely limited circumstances" are we to act so as to interfere with the procurement process. *NKF Engineering, Inc.*, 805 F.2d at 372; *Grimberg*, 702 F.2d at 1372. However, whereas here, because we find legal error and arbitrary conduct, *supra*, as well as the emergence of significant and material newly discovered evidence: [10]

 (i) Defendant's Motion For Summary Judgment is hereby DENIED;

 (ii) Plaintiffs' debarment by the DLA is hereby VACATED;

 (iii) Plaintiffs' Motion To Allow Additional Evidence is hereby GRANTED; and

 (iv) The entire matter is hereby remanded to the DLA for proceedings not inconsistent with this opinion. *Hilo Coast Processing*, 7 Cl.Ct. at 194.

Finally, pursuant to RUSCC 60.1(2), this case shall be stayed for six (6) months during which time said rehearing shall be held and a definitive ruling made as provided in FAR § 9.406–3(d)(2) and forwarded to this court. Counsel for defendant shall file with this court a status report regarding the proceedings every thirty (30) days. RUSCC 60.1.

IT IS SO ORDERED.

---

[10]. As an addendum, we note that counsel for plaintiffs represented to the court that three individuals named in the aforementioned indictments—Frank Coccia, Murray Abramowitz, and Donald Sherry—had pleaded guilty to said respective indictments. Based on this representation, the court sought and received written confirmation of this fact from the United States District Court for the Eastern District of Pennsylvania. Said written confirmation was filed with the Clerk of the U.S. Claims Court, *sua sponte*, by the court, on March 17, 1987.

On review, determination as to whether duty to vacate is obligation which may be implied in lease agreement is question of law, as is point of time from which foreseeability of special or consequential damages is measured.