John C. POMORY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–789C.

United States Court of Federal Claims.

Oct. 21, 1997.

Chuck R. Pardue, Augusta, GA, for plaintiff.

S. Lane Tucker, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and James M. Kinsella, Washington, DC, for defendant. LTC David L. Hayden and Major Christine Lerch, Department of the Army, of counsel.

## OPINION

BRUGGINK, Judge.

This is an action by a former officer in the U.S. Army. On June 6, 1994, plaintiff was discharged due to physical disability with an honorable discharge and severance pay. He was rated as ten–percent disabled, based on major depression. Plaintiff contends he had other disabling conditions that should have prompted a higher disability rating and a disability retirement. The action is pending final disposition based on plaintiff's exceptions to the U.S. Army Physical Disability Agency's (USAPDA) updated findings on remand. Oral argument is deemed unnecessary.

## FACTUAL BACKGROUND

Plaintiff graduated from the United States Military Academy at West Point. In June 1991 he entered active duty. In October 1991 he passed the Army physical–fitness test. During his time at West Point, while playing football, plaintiff suffered a third–degree shoulder separation involving his right acromioclavicular joint. The Medical Evaluation Board (MEB) findings in the record reflect that he "did well" despite the injury, which is not considered to be service connected, until October 17, 1991, when he re–injured his shoulder while carrying a rucksack during preparation for Ranger School. (R. at 43.)

Plaintiff had other physical and mental injuries or disabilities. In October 1993 he referred himself to a mental-health clinic due to anxiety attacks and depression. He was referred to Col. Francis K. Moll, M.D., preparatory to an evaluation by a MEB. Dr. Moll examined plaintiff on January 3, 1994. He reported, among other things, that plaintiff had a "[p]ainful right shoulder, secondary to acromioclavicular joint injury, unimproved post surgical treatment. EPTS, service aggravated." (R. at 48.) Plaintiff's report reflects that, from the time of his re-injury, he has had difficulty doing strenuous physical activities involving his shoulder, such as throwing a ball, doing pushups, or going through a full range of shoulder motion without pain.

On January 27, 1994, the MEB concluded, with respect to the shoulder injury, that although it was initially incurred prior to service, it was permanently aggravated by service. The MEB noted a number of other injuries [1] or conditions that were incurred during active duty and referred the case to a Physical Evaluation Board (PEB). (R. at 41.) Plaintiff took issue with the MEB's failure to refer to certain data, including information that he had considerable loss of strength in his right shoulder. (R. at 37.) Two addenda were issued to the MEB narrative summary. In part they clarified that his

---

1. The court notes that the MEB specifically found that plaintiff's hip problems began with a preexisting condition and were aggravated as a natural progression of the condition. Dr. Moll accordingly did not feel that the problem was related to military service.

psychiatric diagnosis had worsened. (R. at 38–39.)

On March 28, 1994, an informal PEB was convened to consider plaintiff's case. After reviewing the written record, it found that he was unfit for duty and recommended separation with severance pay at a rating of ten percent for major depression only. (R. at 17.) The informal board found that his right shoulder pain was not aggravated during active duty nor was it the proximate result of performing duty. The other injuries or conditions were likewise found not to be ratable or service connected.

Plaintiff disagreed with the informal board and exercised his right to a hearing before a formal board. (R. at 18.) A formal PEB was conducted on April 4, 1994, at which plaintiff appeared with counsel. While a hearing was held, no transcript of that proceeding is available for review. The formal board endorsed the action of the informal board. (R. at 21–22.) The formal board stated that it had reevaluated the medical records and considered the sworn testimony by plaintiff. Based on that review, it found him incapable of performing his duties based on depression. It refused to rate the shoulder problem, however, noting that "[t]here is compelling evidence to support a finding that the current condition existed prior to service (EPTS) and was not permanently aggravated by such service." (R. at 21 .) Plaintiff filed a rebuttal with the PEB on April 17, 1994. In his rebuttal, plaintiff's attorney states:

> For these reasons we respectively request that the [PEB] reconsider its formal board decision and permanently retire [plaintiff] at 30% under VA Code 9207 and that you give an aggravation rating under VA Code 5203/5003 for his painful right shoulder and shoulder surgery that occurred on active duty. That the EPTS factor be rated at 0% and that the service aggravation factor be at least 10%.

2. The VA rated plaintiff's shoulder condition at thirty percent.

3. The PEB specifically stated that there "is compelling evidence to support a finding that the current condition existed prior to service (EPTS) and was not permanently aggravated by such

(R. at 4.) The PEB reviewed its findings but did not change them. (R. at 3.)

The ratings and findings of the PEB were approved by the Adjutant General of the USAPDA on behalf of the Secretary of the Army on April 28, 1994. (R. at 21.) On June 6, 1994, plaintiff was discharged due to physical disability with an honorable discharge and severance pay, but no retirement pay. In August 1994 plaintiff was examined by the Veterans Administration (VA). On April 21, 1995, plaintiff was rated by the VA with a combined disability rating of seventy percent based on that examination.[2] (Pl.'s Reply Br. to Def.'s Mot. to Dismiss and Pl.'s Mot. for Summ. J., app., at 1B.) Suit was brought here on December 5, 1995.

Plaintiff's challenge to the Army's decision to discharge him without disability retirement pay is narrowly focused. His principal contention is that the PEB decision was arbitrary, capricious, or not supported by substantial evidence because the various grounds of asserted disability were either rejected as not service connected, rated too low, or treated as not service aggravated.

On January 24, 1997, this court denied defendant's motion for summary judgment under RCFC 56.1. In addition, this court granted plaintiff's motion for summary judgment in part and remanded the matter to the USAPDA. Plaintiff's disagreements with the PEB's conclusions regarding the rating of his depression and service-connectedness of his hip and ankle problems were rejected. We noted, however, that the PEB's finding regarding plaintiff's shoulder injury was not supported by the record.[3] The record contained no evidence supporting the finding that the injury was not service connected, and the only evidence not in the record was the testimony given during the PEB formal hearing. This was not available for review, however, because no transcript of that proceeding exists in the record. The court had to assume that there was nothing in the

service." (R. at 21.) The MEB, however, had concluded that the plaintiff's shoulder condition was permanently aggravated by service, based on the existing medical records and the diagnosis of Dr. Moll.

transcript to show that plaintiff had conceded the shoulder injury was not service connected. The matter was remanded to USAPDA for reconsideration of plaintiff's disability rating in light of the shoulder injury.

The USAPDA issued a memorandum on March 5, 1997, with new findings based on its reconsideration of the record. No new PEB was convened, nor was the transcript for the formal PEB hearing produced. The USAPDA reviewed the MEB findings, the Veterans Administration Schedule for Rating Disabilities (VASRD),[4] and the VA's 1994 examination and 1995 disability rating of plaintiff. The Army found that, at most, plaintiff would receive an additional ten–percent disability rating (bringing his total to twenty percent) for his shoulder condition.[5] In addition, it declined to adopt the VA's 1995 rating because there was no indication in the Army's MEB evaluation of limitation of motion of plaintiff's shoulder. The USAPDA concluded that plaintiff would not be eligible for military retirement because the new disability rating of twenty percent did not meet the required thirty–percent rating under 10 U.S.C. § 1201 (1994).

Pursuant to RCFC 60.1(b)(4), defendant filed a status report indicating that the decision on remand by the USAPDA "affords a satisfactory basis for the disposition of this claim," warranting no further proceedings before the Court. After convening a status conference, the court scheduled the filing of exceptions by plaintiff and defendant's responses. That order noted that the matter would be submitted for final disposition once those filings were made.

Plaintiff takes exception to the USAPDA's findings regarding plaintiff's shoulder condition on two grounds. First, plaintiff alleges that the USAPDA's failure to convene a new PEB is error in light of the unavailability of the transcript to the original, formal PEB

hearing. Second, plaintiff contends that the USAPDA's findings are not based on substantial evidence because it failed to take into account the severity of plaintiff's injury and the findings of the 1994 VA medical evaluation.

Defendant responds that: (1) the USAPDA properly reviewed the record on remand; (2) the USAPDA properly refused to adopt the plaintiff's 1995 VA rating; (3) the USAPDA's conclusion regarding plaintiff's disability rating was appropriate because his physical condition did not meet the criteria for a higher rating under the regulations; and (4) adequate evidence exists in the record to support the USAPDA's rating of plaintiff's shoulder condition.

## DISCUSSION

Jurisdiction exists under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994), in conjunction with 10 U.S.C. § 1201 (1994). *See Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed.Cir. 1991); *Cole v. United States*, 32 Fed.Cl. 797, 801 (1995). Nevertheless, the court's ability to review the decision of the Secretary of the Army as exercised through the USAPDA is narrow. The Federal Circuit has noted that:

> responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) (footnotes omitted).

■■■ In reviewing plaintiff's particular disability-retirement claim, the court is limited to determining whether the USAPDA's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *de Cicco v. United States*, 230 Ct.Cl. 224, 228,

---

**4.** The Army has adopted the VASRD in its regulations governing separation for physical disability. *See* Army Reg. 635–40, app. B (Sept. 1, 1990); *cf.* 38 C.F.R. part 4 (1993).

**5.** This rating was based on the MEB finding that plaintiff's shoulder did not suffer any limitation of motion but only pain. No matching or analogous rating other than pain was available under

the VASRD. A higher than ten-percent rating would only be available if two or more major groups of joints were involved. Plaintiff's case does not involve two or more major groups of joints. The USAPDA also noted that plaintiff requested the shoulder be rated at least ten percent in his April 17, 1994, rebuttal to the formal PEB findings.

677 F.2d 66, 70 (1982); *see Heisig*, 719 F.2d at 1156; *Rose v. United States*, 35 Fed.Cl. 510, 512 (1996). As the Federal Circuit noted: "[T]he standard of review does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. Plaintiff bears the burden of showing that the USAPDA's decision was arbitrary, capricious, not supported by substantial evidence, or contrary to applicable statutes and regulations. *See de Cicco*, 230 Ct.Cl. at 233, 677 F.2d at 68; *Rose*, 35 Fed.Cl. at 512.

The current review focuses on the USAPDA's findings on remand and its conclusion that plaintiff is not entitled to retirement for disability under 10 U.S.C. § 1201 (1994). Plaintiff's exceptions center on a revised disability rating below the thirty-percent threshold required for disability retirement.[6]

### A. Procedural Irregularity of USAPDA Remand Decision

■ The U.S.Code provides: "No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it." 10 U.S.C. § 1214 (1994). The Army regulations provide for the full and fair hearing in the form of a formal PEB proceeding. *See* Army Reg. 635–40 ¶ 4–17a.3 (stating purpose of PEB is to provide full and fair hearing under 10 U.S.C. § 1214 (1994)). "A soldier is entitled to a formal hearing if requested after informal consideration by the PEB." *Id.* ¶ 4–21a. Plaintiff requested, and was granted, such a hearing. The question plaintiff raises after remand is whether it was error for the USAPDA not to convene a new formal PEB, especially in light of the unavailability of a

transcript of the original formal PEB hearing.[7]

It is within the USAPDA's powers to convene a new PEB for reconsideration of plaintiff's disability rating if it chooses to do so. *See id.* ¶ 4–22c. On remand, the USAPDA was instructed by this court to reconsider plaintiff's disability rating "in light of the additional service-aggravated condition ..." and to "take whatever actions it deems appropriate ... including convening a new PEB." The remand order did not require the USAPDA to convene a new PEB, but rather required reconsideration in light of the plaintiff's shoulder injury. It decided instead to review the record as it stands and make a determination based on that review, i.e., without a transcript. The USAPDA had the findings of the original PEB, both formal and informal, at its disposal, as well as the initial medical evaluation and the MEB findings. It is apparent that the USAPDA felt the record sufficiently complete such that a reconsideration could be taken without reconvening a new PEB. This action was within the USAPDA's powers as defined in the Army regulations. *See id.* The court cannot find that the USAPDA's decision was arbitrary and capricious based solely on the fact that no new formal PEB was convened on remand.

■ Plaintiff also contends for the first time that the lack of a transcript of the formal PEB hearing deprives him of a "full and fair hearing" under the law. The court is prepared to assume that the lack of a transcript is a procedural error.[8] Assuming that the unavailability of a transcript is error, however, plaintiff must show that it is harmful error. The Federal Circuit has stated, with respect to procedural irregularities in

---

6. For an overview of the Army's physical-disability review process, see *Slesinski v. United States*, 34 Fed.Cl. 159, 162–63 (1995).

7. Only after remand did plaintiff allege that the lack of a transcript constituted error. Plaintiff should have raised this question earlier than on review after remand.

8. There is no indication in the statute or regulations whether a "full and fair hearing" dictates a transcript of the proceedings as part of the record. The court notes, however, by analogy to the Administrative Procedure Act (APA), *see* 5 U.S.C.

§ 554(a)(4) (1994) (specifically excluding "the conduct of military or foreign affairs functions" from the adjudication requirements under the APA), that:

The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision in accordance with section 557 of this title and ... shall be made available to the parties.

*Id.* § 556(e). In this context a transcript is not required for a hearing, but if it exists, it becomes part of the exclusive record.

cases before the Merit Systems Protection Board (MSPB): "It is insufficient to simply show that a statutory procedure was not followed at the agency level. Harmful error must be shown." *Handy v. U.S. Postal Service,* 754 F.2d 335, 338 (Fed.Cir.1985) (involving denial of statutory right to make an oral reply before MSPB); *see Morales v. Merit Sys. Protection Bd.,* 932 F.2d 800, 802 (9th Cir.1991) (involving unavailability of testimony due to a tape-recorder malfunction); *Sterlingwear of Boston, Inc. v. United States,* 11 Cl.Ct. 879, 889 (1987) (involving failure to hold fact-finding hearing in contract bid protest).

Indeed, the Federal Circuit has rejected the premise that the unavailability of a transcript is harmful per se. *See Harp v. Department of the Army,* 791 F.2d 161, 163 (Fed.Cir.1986); *accord Morales,* 932 F.2d at 802. In *Harp,* the petitioner appealed a decision of the MSPB removing him from employment as a medical technologist at Fort Gordon, Georgia. Petitioner asked for a remand to the MSPB on the ground that no transcript was made because a tape recording of the hearing before the MSPB was lost. There was statutory authority requiring the keeping of a transcript in MSPB cases. *See* 5 U.S.C. § 7701(a)(1) (1982). The court noted:

> Although Mr. Harp alleges generally that he is prejudiced by the absence of the transcript he has failed to even allege that *any* particular testimony which would be revealed if there were a transcript was not considered or was misused by the presiding official and, therefore, might have caused a different result in the case.

> Although a transcript of the hearing is not available, the record in this case is sufficient to provide a basis for meaningful review of the *issues raised* by petitioner. These issues are not directed to error in the factual findings made by the presiding officer....

*Harp,* 791 F.2d at 163.

Plaintiff in this case does not point to any specific issue on which the unavailability of a transcript has prejudiced his interest. The USAPDA did not base any of its findings or conclusions on testimony given before the formal PEB hearing.[9] More importantly, plaintiff has not cited specific testimony that should have been available and would have affected the outcome.

The crucial issue to the USAPDA disability rating and other findings is the degree of limitation of motion in plaintiff's shoulder at the time of his separation from the Army. There is no question that plaintiff, in his written submissions before the MEB and the PEB, raised the issue of limitation of motion in his shoulder. The record contains the findings of both the informal and formal PEB. It also contains the initial medical evaluation performed by Dr. Moll and the findings of the MEB. There is sufficient evidence in the record to support the findings of those boards that plaintiff did not exhibit any limitation of motion at the time of separation. Furthermore, plaintiff has not alleged that he testified or demonstrated at the hearing that his motion was limited at the time of his separation from the Army. The unavailability of a transcript of the formal PEB hearing is therefore not harmful error such that a new PEB should have been conducted on remand.

B. *Improper Consideration of the Severity of Plaintiff's Injury*

Plaintiff also contends that the USAPDA did not properly consider the severity of the shoulder injury. The plaintiff bases this contention on three factors. First, plaintiff states that greater weight should be given to the 1994 findings of the VA medical evaluation, which led to a disability rating of thirty percent for his shoulder condition. Second, he states that the MEB findings support a

---

9. Initially, the USAPDA refused to rate the shoulder injury because there was "compelling evidence" supporting a finding that the condition existed prior to service. This court rejected that finding as not supported by the evidence because of contradictory statements in the MEB findings and because the government had not alleged that the transcript, although unavailable, would have reflected damaging admissions by plaintiff. On remand the USAPDA rated the shoulder injury, relying solely on the medical evaluations and existing regulations; it did not rely on any testimony, either directly or indirectly, in reaching its conclusion.

higher rating because the MEB "concluded that Lieutenant Pomory's shoulder was a grade III shoulder separation *unimproved* ... after surgery." (Pl.'s Exceptions to the Final Decision on Remand of the United States Army Physical Disability Agency at 3.) Third, plaintiff takes exception to the disability rating for pain, stating that a higher rating for pain would be more appropriate based on the severity of the shoulder separation and the length of time he suffered pain in his shoulder.

 As noted above, this court is limited in the scope of its review of the USAPDA findings, as modified on remand. Review is limited to whether the decision was arbitrary, capricious, in violation of statute or regulations, or not supported by substantial evidence. *See de Cicco*, 230 Ct.Cl. at 228, 677 F.2d at 70. Thus this court does not evaluate the weight given to the 1994 VA medical evaluation by the USAPDA. The fact that the Army gave little weight to the 1994 VA determination would not be arbitrary or capricious in light of the different purposes of the Army evaluation and the VA evaluation. This court can, however, determine whether the USAPDA completely disregarded the 1994 VA evaluation and determination. *See Heisig*, 719 F.2d at 1157 (noting that a disability rating under VA standards was evidence to be considered along with all other evidence).

> Although both the Army and the VA use the VA Schedule for Rating Disabilities, the Army disability rating is intended to compensate the individual for interruption of a military career because of an impairment. The VA awards ratings because a medical condition affects the individual's civilian employment. Furthermore, while the Army must determine an appropriate permanent disability rating before the individual can be separated from the service, the VA can evaluate a veteran throughout his or her lifetime, adjusting the percentage of disability....

*Slesinski v. United States*, 34 Fed.Cl. 159, 164 (1995) (quoting Army Board for the Correction of Military Records decision in that case); *see also Cole*, 32 Fed.Cl. at 802 (noting that the VA, in contrast to the military determination, "rates the effect of the disability on civilian employment"). The differing purposes of the two evaluations make a comparison for the sake of finding error of little value.

Additionally, plaintiff mischaracterizes the MEB findings. The MEB report states: "1. Painful right shoulder, secondary to acromioclavicular joint injury, unimproved post surgery." (R. at 41.) Plaintiff characterizes this as meaning that the severe shoulder separation he suffered is unimproved. This is incorrect. It is clear from the finding that the "unimproved" refers to the painful right shoulder, indicating that the pain in his shoulder, not the shoulder separation, is unimproved. The USAPDA applied the appropriate rating schedule and regulations to the facts and determined that pain was the only possible rating for plaintiff's shoulder. *See* 38 C.F.R. § 4.71a, at 383, 390 (1993) (describing 5003 (degenerative arthritis) and 5201 (limitation of motion) ratings respectively). This finding was based on the evaluation of Dr. Moll and the findings of the MEB and the PEB, which found no limitation on motion to qualify for the standard shoulder disability ratings.

 Plaintiff also contends that a higher rating is appropriate for pain because he suffered a "grade three separation unimproved by surgery." However, the higher rating for pain, as indicated by the USAPDA, would require two or more major groups of joints involved.[10] Plaintiff offers no other reason to disagree with the finding of the USAPDA than the fact that the *original* injury was the most severe shoulder dislocation rated. The determination of the USAPDA was made at the time of separation, after surgery was performed to repair the original injury.[11] At that time, plaintiff exhibited a

---

10. The rating for pain is set out in Army Reg. 635–40, appendix B, paragraph B–24, entitled "pain conditions rated by analogy to degenerative arthritis." *Cf.* 38 C.F.R. § 4.45(f) (1993).

Major joints include the shoulder, elbow, wrist, hip, knee, and ankle. *See id.*

11. Plaintiff also alleges that a higher rating is appropriate because of the length of time that his

full range of motion and some pain associated with the original injury. The VASRD rating for degenerative arthritis (code 5003), which the USAPDA used as an analogy for plaintiff's pain, provides for a twenty–percent rating where there is no limitation of motion and where there is "x–ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations." *Id.* § 4.71a, at 383. Plaintiff's condition did not satisfy the criteria for a higher pain rating. Thus it was not error for the USAPDA to rate the pain at no more than ten percent, which is, in any event, the minimum rating plaintiff requested in his rebuttal to the formal PEB findings.

## CONCLUSION

Plaintiff has not shown that the USAPDA's findings and conclusions on remand are arbitrary, capricious, not in accordance with the law, or not supported by substantial evidence. The unavailability of a transcript of the formal PEB hearing, while error, has not been shown to be prejudicial. On the above stated grounds, the decision of the USAPDA rating plaintiff's disability at no more than twenty percent is hereby affirmed, and the complaint is dismissed. No costs.

shoulder exhibited pain over several years. He points to medical records showing complaints of pain over the course of years since his initial injury. The length of time the pain was evident is irrelevant to the USAPDA's determination; the regulations focus on the where the pain is located as an aggravating factor warranting an increased rating. *See* 38 C.F.R. § 4.71a, at 383 (1990) (noting requirements for rating injury for degenerative arthritis). The USAPDA's determination is intended to take a "snapshot" of the plaintiff's medical condition at the time of separation. Any conditions suffered before or since are not relevant to its determination.