Based upon the foregoing, this court, therefore, concludes:

1. Defendant's arguments regarding the validity of the '497 patent are not well-founded.

2. Claims 1–7, 10, 18–21, 23–25 of the '800 patent are invalid as in violation of the on-sale doctrine of 35 U.S.C. § 102(b).

3. Claims 1–5, 18–21 and 23–25 of the '800 patent are also invalid as obvious under 35 U.S.C. § 103(a).

4. Defendant's other arguments regarding the validity of the '800 patent are not well-founded.

By April 12, 2002, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule to the extent relevant.

**IT IS SO ORDERED.**

**Daniel P. HASKINS, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 00–272–C.

United States Court of Federal Claims.

March 13, 2002.

**39.** *Minimum Standards of Judicial Administration* at xix (Arthur T. Vanderbilt ed., The Law Center of New York University for the National Conference of Judicial Councils, 1949).

Edward A. Zimmerman, Edina, MN, for plaintiff.

Thomas B. Fatouros, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Deborah A. Bynum, Assistant Director, Civil Division, United States Department of Justice, Wash-

ington, DC, for defendant. Lt. Col. Tara A. Osborn and Capt. Toby D. McCoy, Department of the Army, Office of the Judge Advocate General, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by a discharged veteran to obtain disability retirement pay. Disability retirement pay is available if a service member receives a physical disability rating of 30 percent disability or greater. Plaintiff contends that the Army's assignment of a 20 percent physical disability rating and severance pay was improper, and that he should have received a physical disability rating of at least 30 percent and should have been given a medical retirement with full disability pay. Defendant disputes this court's jurisdiction to hear this case and contends that the matter is nonjusticiable. In the alternative, defendant argues that the decision of the Army Board for Correction of Military Records not to overturn the 20 percent disability rating by the Medical Evaluation Board, Physical Evaluation Board and United States Army Physical Disability Agency was fully supported by the evidence in the record. Defendant's Motion to Dismiss Or, in the Alternative, Motion for Judgment on the Administrative Record (Def.'s Mot.) at 23; Defendant's Statement of Facts (DSF) ¶ 40. The matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and, in the alternative, motion for judgment on the administrative record.

For the following reasons, defendant's motion to dismiss is DENIED and defendant's motion for judgment on the administrative record is GRANTED.

## I. Background

Plaintiff enlisted in the United States Army (Army) on May 22, 1969, and entered active duty on June 12, 1969. DSF ¶ 1.[1] He joined the Army Reserves on July 19, 1971 and served until his separation on October 27, 1994. *Id.* ¶¶ 3, 35; Complaint ¶ 7.

On January 9, 1990, plaintiff was injured when a 130–pound box fell and struck him on the right thigh. Complaint ¶ 8–9. Plaintiff was examined and treated at a Veterans Administration (VA) medical facility on January 30, 1990 for pain in his knee and increasing pain and numbness in his thigh. Administrative Record (AR) at 438. On March 19, 1990 plaintiff again sought medical treatment, complaining of pain in his right hip and knee. He was treated and released. AR at 434–35. Another examination on April 26, 1990 found that plaintiff continued to report discomfort in his groin and thigh, although he had a full range of motion in his knee and hip. AR at 430. An examination on May 29, 1990 reported "neurosensory deficit and pain" in plaintiff's right hip, along with "possible ... nerve compression [and] inflam[ed] inguinal lymph nodes." AR at 416–17. A subsequent examination noted that plaintiff had begun to report back pain and diagnosed "bilateral spondylolysis" and a "central bulging disk" in his lower back. AR at 412. Subsequent examinations on June 4, 1990 and July 10, 1990 found no bone or nerve problems in plaintiff's right leg. AR at 408, 400.

In January 1991, a medical examination found that plaintiff continued to suffer leg, groin and back pain, and diagnosed plaintiff with a "spondylolytic defect" along with other back problems. AR at 382–83. The examining physician reported that plaintiff rejected the suggestion of surgical intervention, on the grounds that he preferred "to undergo medical board evaluation and avoid more aggressive intervention until a time when it became more 'physically disabling.'" AR at 383–84. On February 6, 1991, plaintiff was given another physician profile which indicated his condition as spondylolysis. DSF ¶ 16;

---

**1.** Plaintiff accepts defendant's statement of facts. Plaintiff states that "[d]efendant's Statement of Facts is extensive and comprehensive." Plaintiff's Brief in Response to Defendant's Motion to Dismiss or for Judgment on the Administrative Record (Pl.'s Resp.) at 2. Neither party requested oral argument. *See* Appendix H to the Rules of the United States Court of Federal Claims (RCFC). After reviewing the briefing, the court decided that it was not necessary to request oral argument. However, the court has sought and received additional briefing. *See* Order of January 24, 2002.

AR at 376. A chiropractor told plaintiff on April 4, 1991 that surgery was unnecessary at that point. AR at 373.

Plaintiff's condition was considered by a medical evaluation board (MEB) which found, on May 22, 1991, that plaintiff's back condition was "significantly disabling [him] from continuing on active duty."[2] AR at 351. The MEB recommended that plaintiff be referred to a physical evaluation board (PEB) for disability assessment. *Id.* Plaintiff was not evaluated by a PEB at that time, however, because he continued to undergo treatment and examinations for his back pain. DSF ¶ 19. From March 1993 to August 1993, plaintiff underwent examinations for the purpose of medical evaluation. DSF ¶ 20. A third MEB was convened in February 1994 and that MEB also recommended that plaintiff be referred to a PEB for disability determination. AR at 149. An informal PEB gave plaintiff a disability rating of 10 percent based on his back condition, and plaintiff requested a formal PEB hearing with a personal appearance. DSF ¶¶ 23, 24. The formal hearing, at which plaintiff was represented by counsel, was held on May 10, 1994. The PEB concluded on the same day that plaintiff's disability rating was 20 percent. AR at 111–14. On May 20, 1994, plaintiff filed a Letter of Rebuttal and Request for Reconsideration of the PEB's decision. AR at 91–105. The Board rejected plaintiff's request on May 25, 1994, and forwarded the case to the United States Army Physical Disability Agency (USAPDA) for further processing. AR at 86–90. The USAPDA affirmed the PEB's rating on June 8, 1994. DSF ¶ 29. Plaintiff received a discharge order on August 12, 1994. AR at 66.

Plaintiff submitted a letter to the USAPDA on September 22, 1994, requesting reconsideration of his case in light of a medical examination conducted on September 7, 1994. AR at 57–58. The USAPDA denied reconsideration, finding that the additional examination did not provide any new information. DSF ¶ 32. Plaintiff then appealed to the Army Board for Correction of Military Records (ABCMR or Board), requesting that the ABCMR overturn the USAPDA's affirmance of the PEB's rating and change plaintiff's disability rating to 70 percent or, in the alternative, give plaintiff a temporary disability rating of 30 percent. The ABCMR denied plaintiff's application. AR at 1. Plaintiff brought suit in this court on May 10, 2000.[3]

## II. Discussion

### A. Motion to Dismiss

Defendant has moved under RCFC 12(b)(1) to dismiss plaintiff's complaint as outside the court's subject matter jurisdiction. Def.'s Mot. at 1, 11–17. Subject matter jurisdiction is a "threshold matter" that must be addressed before the court discusses the merits of a claim. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Nippon Steel Corp. v. United States,* 219 F.3d 1348, 1352 (Fed.Cir.2000).

Defendant argues that the relief requested by plaintiff with respect to the disability rat-

---

**2.** The record does not state the source of plaintiff's referral to the MEB. Usually, the treating physician initiates the process for disability determinations by referring a patient to a MEB when it appears the patient's condition may warrant retirement or discharge. Def.'s Mot. at 4. Defendant describes the role of the MEB in the Army's disability determination process as follows: "[A] Medical Evaluation Board ("MEB") is the first step in the process. Medical evaluation boards are composed of at least three medical doctors, who are also medical corps officers, with detailed knowledge of the directives pertaining to standards of medical fitness and unfitness, disposition of patients, and disability separation processing. The primary responsibility of medical evaluation boards is to diagnose and describe medical conditions. Medical evaluation boards refer soldiers to physical evaluation boards . . .

when the soldier is unable to perform required duties." DSF n. 3.

**3.** After one request for extension, defendant filed on September 13, 2000 its motion to dismiss or, in the alternative, for judgment on the administrative record that is currently before the court. Subsequently, plaintiff filed 18 motions requesting extensions of time in which to file a response. Plaintiff ultimately filed its response brief out of time on August 24, 2001 by leave of the judge. Defendant filed its reply brief on October 19, 2001. After reviewing the briefing, the court addressed written questions to the parties seeking clarification of several issues raised but not fully addressed in initial briefing. *See* January 24, 2002 Order.

ing is in fact a claim for placement in a specific retirement status and is not within the court's Tucker Act jurisdiction. Def.'s Mot. at 11–17. Defendant cites *Rice v. United States,* 31 Fed.Cl. 156 (1994), for the proposition that the court may not grant plaintiff the benefit of "a position to which he should have been, but was not, appointed." *Id.* at 15–16. Plaintiff argues that its requested relief is incidental to a money judgment and is therefore within the court's jurisdiction. Pl.'s Resp. at 3–7. The court agrees with plaintiff.

The court's jurisdiction is limited by the extent of the Congressional waiver of the United States' sovereign immunity. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The Tucker Act, 28 U.S.C. § 1491, effected a limited waiver of sovereign immunity with respect to certain classes of cases and specific types of relief available against the United States in this court. Specifically, the Tucker Act permits a suit "founded ... upon the Constitution or any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1491(a)(1) (2001). The Tucker Act does not create a substantive cause of action; a plaintiff must point to a substantive provision elsewhere in federal law to invoke this court's jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The substantive right invoked must be money-mandating. *See Testan,* 424 U.S. at 400, 96 S.Ct. 948; *See also James v. Caldera,* 159 F.3d 573, 580 (Fed. Cir.1998).

■ This court does not have the general equitable powers of the district courts of the United States. *Bowen v. Mass.,* 487 U.S. 879, 905, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). The court may, however, grant equitable relief in certain situations defined by the Tucker Act. One such provision permits certain types of incidental equitable relief applicable to the type of claim brought by plaintiff:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2) (2001). Plaintiff's complaint does not request that, as part of the judgment, he be placed in a specific retirement status. Plaintiff states in his complaint that defendant failed properly to evaluate his disability. Complaint ¶ 22. Defendant insists that plaintiff is requesting placement in a specific retirement status and that the court "lacks the authority to order [plaintiff] to be placed in a retired status." Def.'s Mot. at 17.

■ The legislative history of the 1972 amendment to the Tucker Act providing for incidental and collateral equitable relief in specific situations indicates that the amendment was intended to address cases like these. Congress anticipated that military personnel may sue for monetary damages arising from retirement in the wrong status:

> [An] important classification where the present limits on the remedies available in the Court of Claims imposes unwarranted burdens on the litigant is in cases involving military personnel. These generally are monetary claims which are based on retirements in an improper status, such as failure to award disability retirement pay or retirement in proper rank.... In those cases, the Court of Claims can grant a monetary judgment but cannot alter the serviceman's military status. This bill would permit the court to grant such military personnel relief collateral to and consistent with the judgment.

S.Rep. No. 92–1066, at 2, *reprinted in* 1972 U.S.C.C.A.N. 3116, 3118. Plaintiff's suit for damages arises from an erroneous rating of his disability resulting, plaintiff alleges, in an incorrect retirement status.

In *Rice,* on which defendant relies, the court refused to overturn the Air Force's determination that the plaintiff was fit for duty, holding that the court does not have "the primary equitable jurisdiction necessary to order the retirement of an individual from the military." 31 Fed.Cl. at 164. The court

contrasted such a remedy with "the collateral equitable jurisdiction to incidentally correct an already retired member's retirement status." *Id.* The question in *Rice* was whether the equitable relief requested was "primary" or "collateral." In *Rice,* the court found that the equitable relief requested was primary. *Id.* Here, plaintiff has not requested any equitable relief. Even if plaintiff had sought the equitable relief of a change in his retirement status as an incident to the monetary relief he seeks, such relief would be within the terms of the Tucker Act.

■ Defendant also argues that plaintiff's claim should be dismissed because plaintiff was separated from the Army pursuant to 10 U.S.C. § 1203, a provision that is not money-mandating. Def.'s Mot. at 13–14. Section 1203 addresses "separation," *see* 10 U.S.C. § 1203(a), whereas section 1201 addresses "retirement." *See* 10 U.S.C. § 1201(a). Defendant argues that the court lacks the power to determine that plaintiff should have been retired, rather than separated, and to award damages accordingly. Def.'s Mot. at 14. The court disagrees.

■ Whether plaintiff should have been retired, rather than separated, is an issue of "retiremen[t] in an improper status" that the Tucker Act permits the court to determine. *See* S.Rep. No. 92–1066, at 2, *reprinted in* 1972 U.S.C.C.A.N. 3116, 3118. Moreover, as plaintiff points out, *see* Pl.'s Resp. at 5–7, many decisions of this court and of the Court of Appeals for the Federal Circuit have addressed military personnel requests for money based on their entitlement to a different retirement status. *See Sawyer v. United States,* 930 F.2d 1577 (Fed.Cir.1991) (addressing denial of former serviceman's disability retirement benefits on the grounds of misconduct); *Jordan v. United States,* 205 Ct.Cl. 65, 1974 WL 21686 (1974) (granting separated serviceman disability retirement pay); *Robbins v. United States,* 29 Fed.Cl. 717 (1993) (addressing discharged serviceman's request for medical retirement retroactive to date of discharge); *Jones v. United States,* 7 Cl.Ct. 673 (1985) (addressing discharged serviceman's request for back pay, reinstatement, and placement in retirement status). Plaintiff's claim is for retirement

benefits under § 1201, a money-mandating provision. *See Sawyer,* 930 F.2d at 1580 (Fed.Cir.1991). Because plaintiff has not requested equitable relief, there is no possibility that a judgment for plaintiff will usurp a discretionary decision of the Army, as defendant argues. *See* Def.'s Mot. at 14–15. Because the sole result of a judgment for plaintiff will be the payment of money to plaintiff, not the placement of plaintiff in a different retirement "position," the Secretary's discretionary authority is not implicated.

■ Moreover, plaintiff has alleged a wide variety of procedural defects in his separation proceedings. *See* Complaint ¶¶ 14–20, 24–28 (alleging that the Army failed to evaluate relevant evidence and thereby failed to follow its own regulations). An administrative decision of the armed forces must be overturned if it is "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure." *Clayton v. United States,* 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980); *see also Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993). The contention that the Army's failure to grant plaintiff disability retirement was in violation of applicable regulations is clearly justiciable by this court.

For the foregoing reasons, defendant's Motion to Dismiss is DENIED.

**B. Motion for Judgment on the Administrative Record**

**1. Standard of Review**

A motion for judgment upon the administrative record is measured by the same standards as a motion for summary judgment. RCFC 56.1(a); *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996). Judgment upon the administrative record is proper when the record shows "that there is no genuine issue as to any material fact." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Review of military disability cases is limited to "determining whether a decision of the Correction Board is arbitrary, capricious, un-

supported by substantial evidence or contrary to applicable statutes or regulations." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983); *Clayton v. United States,* 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980); *see also Champagne v. United States,* 35 Fed.Cl. 198, 208 (1996), *aff'd,* 136 F.3d 1300 (Fed.Cir. 1998). "[T]he standard of review does not require a reweighing of the evidence, but a determination whether the *conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157. The court cannot substitute its judgment for that of the examining physicians, medical evaluation board, physical evaluation board or the Army Board for the Correction of Military Records. *Heisig,* 719 F.2d at 1156–57.

Plaintiff bears the burden to overcome the "strong, but rebuttable, presumption that administrators of the military … discharge their duties correctly, lawfully, and in good faith." *Champagne,* 35 Fed.Cl. at 208. The burden is on plaintiff to demonstrate that the actions of the Army were arbitrary and capricious, contrary to law, or unsupported by substantial evidence, by producing "cogent and clear and convincing evidence." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986). Accordingly, the scope of review is extremely narrow. *Champagne,* 35 Fed.Cl. at 208.

2. Whether the Army failed to follow 10 U.S.C. § 1201

The parties agree that 10 U.S.C. § 1201 in effect in 1994 is applicable to the determination contested by plaintiff. Plaintiff's Brief in Response to Court Order of January 24, 2002 (Pl.'s Supp. Brief) at 5; Defendant's Supplemental Brief at 1. Plaintiff makes two arguments based on 10 U.S.C. § 1201. First, plaintiff contends that 10 U.S.C. § 1201 required the Army to look only at the Veteran's Administration Schedule for Rating Disabilities (VASRD) in its rating of plaintiff's disability and excluded any reliance on the Army regulation. Pl.'s Resp. at 11. Second, plaintiff contends that, until a 1996 amendment, 10 U.S.C. § 1201 required the Army to rate plaintiff's "overall condition of physical disability." Pl.'s Resp. at 21. Plaintiff's interpretation of 10 U.S.C. § 1201 would have required defendant to assign all of plaintiff's injuries a percentage for the disability determination. *See id.*

a. Whether the VASRD alone is determinative

■ First, the court examines the text of 10 U.S.C. § 1201 to determine if, as plaintiff argues, it forecloses the use of an implementing regulatory framework other than the VASRD. The relevant portions of text do not, in fact, address the question of regulatory implementation of the Secretary's determination that a service member is unfit to perform the duties of office. The VASRD (referred to in the 10 U.S.C. § 1201 clause (b)(3)(B) as "the standard schedule of rating disabilities in use by the Department of Veterans Affairs") only comes into play when the Secretary is considering whether or not to retire the member "with retired pay computed under section 1401 of this title." 10 U.S.C. § 1201 (1994). The text of the statute makes clear that the VASRD comes into play only in cases in which physical disability has already been determined by the Secretary and then only as a partial, alternative condition precedent to a decision by the Secretary to retire a service member with retired pay:

§ 1201. Regulars and members on active duty for more than 30 days: retirement

Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 270(b) of this title) for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also determines that—(1) based upon accepted medical principles, the disability is of a permanent nature and stable; (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and (3) either—(A) the member has at least 20 years of ser-

vice computed under section 1208 of this title; or (B) *the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination;* and either—(i) the member has at least eight years of service computed under section 1208 of this title; (ii) the disability is the proximate result of performing active duty; (iii) the disability was incurred in line of duty in time of war or national emergency; or (iv) the disability was incurred in line of duty after September 14, 1978.

*Id.* (emphasis added).

It is true that the language emphasized in subparagraph (3)(B) refers to the VASRD, but nothing in this language of 10 U.S.C. § 1201(3)(B) makes the VASRD the guidance with respect to unfitness determinations, still less the sole and exclusive guidance for the Army when making disability determinations. Nor does anything in the statutory language exclude or prohibit the issuance of the regulations by the Army to assist the Secretary in making a determination that the service member is unfit to perform the duties of the office.

The court should defer to the agency's interpretation and implementation of a statute unless unreasonable. *See Chevron U.S.A. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Power Reactor v. Intern. Union of Electric, Radio and Mach. Workers,* 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961). It is also well-settled that an organization is bound by its own regulations. *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all ...."); *see also Dodson v. United States Gov't, Dep't of Army,* 988 F.2d 1199, 1204 (Fed.Cir.1993).

Nothing in 10 U.S.C. § 1201 prohibits the Army from applying its own regulations as a guide to determining unfitness or to rating physical disabilities.

b. Whether the 1996 amendment to 10 U.S.C. § 1201 supports plaintiff's interpretation of the 1994 version of the statute.

■ Plaintiff acknowledges that his case is governed by the text of 10 U.S.C. § 1201 before its 1996 amendment. However, plaintiff argues that the interpretation of the 1994 version of 10 U.S.C. § 1201 should be based on a subsequent amendment to the statute. Plaintiff argues that, in light of the 1996 amendment, the 1994 version of 10 U.S.C. § 1201 (quoted in full text above) must be read to require the Army to rate a plaintiff's "overall condition of physical disability" and that all of plaintiff's injuries should have been assigned percentages for the disability determination. Pl.'s Resp. at 21.

Section 1201 was amended in 1996 to, *inter alia,* divide the single section into subsections (a) and (b). Language added to new subsections (a) and (b) by the amendment is underlined:

§ 1201. Regulars and members on active duty for more than 30 days: retirement *(a) Retirement.*—Upon a determination by the Secretary concerned that a member ... is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay ... the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also *makes the determinations with respect to the member and that disability specified in subsection (b).*

*(b) Required determinations of disability.*—Determinations referred to in subsection (a) are determination by the Secretary that—

(1) based upon accepted medical principles, the disability is of a permanent nature and stable; (2) the disability is not the result of the member's intentional misconduct ... and (3) either—(A) the member has at least 20 years of service ... (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination ....

10 U.S.C. § 1201 (1998) (emphasis supplied); *see also* Pl.'s Supp. Brief at 3.

Plaintiff's sole argument is that "when the legislature adopts material changes in the language of a statute, it can be assumed the changes are significant and intended." Pl.'s Supp. Brief at 2–3. The "material" change that is the basis for plaintiff's reading of the statute is the addition of the words "that disability" in the concluding phrase of 10 U.S.C. § 1201(a). According to plaintiff, the addition of "that disability" signals a move to rate only injuries that are unfitting and the absence of "that disability" in the prior version of the statute suggests that all injuries should be rated. Pl.'s Supp. Brief at 3–4. Plaintiff states, "The adoption of the words 'that disability,' made a specific reference to the unfitting disability alone .... Therefore ... the previous language required the rating of more than just the unfitting disability when it spoke of rating the disability." *Id.* at 4. The court disagrees. The concept of a singular disability is carried forward from the 1994 version of the statute, which referred repeatedly to "*the* disability" [4] (emphasis added).

Plaintiff's interpretation of the 1994 version of the statute seems improbable. As plaintiff acknowledges, plaintiff has offered no case law or legislative history to support his interpretation that the 1994 version of 10 U.S.C. § 1201 required the Army to rate all of plaintiff's injuries. Pl.'s Supp. Brief at 2.[5] Nor does the court find that plaintiff's interpretation is supported by the text of the statute.

3. Whether the Veterans Administration disability rating establishes the percent of plaintiff's disability for the Army

■ Plaintiff contends that the fact that a higher percent disability was assigned by the Veterans Administration (initially 40 percent and then increased to 60 percent, 90 percent and ultimately 100 percent) is evidence that the Army acted arbitrarily and capriciously when it assigned a lower disability rating to plaintiff. Pl.'s Resp. at 13. Although both the Army and Veterans Administration (VA) utilize the VASRD, the two agencies use the VASRD rating system for different purposes. *See Champagne,* 35 Fed.Cl. at 211; *see also Bosch v. United States,* 27 Fed.Cl. 250, 265 (1992). The Army uses the VASRD to determine fitness for performing the duties of office, grade, and rank, whereas the VA uses the VASDR to determine disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world. *See Champagne,* 35 Fed.Cl. at 211–12. A Veterans Administration rating determination is not binding on the Army. *Id.* at 212.

Although plaintiff concedes that "the determination of a disability rating by a separate agency is not binding on the Army[,]" plaintiff argues, citing *Jordan,* 205 Ct.Cl. at 80, that the variance between the two independent ratings "indicates either that widely different rating criteria or arbitrary and capricious practices are being used." Pl.'s Resp. at 15–16. The court, however, cannot find language in *Jordan* indicating that the case stands for such a broad proposition, and plaintiff did not direct the court's attention to specific language. The court in *Jordan* merely states, "One possible way to reconcile the differences would be to conclude that the Army failed or neglected to adequately evaluate plaintiff's condition prior to discharge." *Jordan,* 205 Ct.Cl. at 80.

■ The *Jordan* case is distinguishable from this case. In *Jordan,* although the

---

4. Plaintiff concedes that 10 U.S.C. § 1201 now provides that the Army is required to rate only those injuries that themselves would render a service member unfit for duty. Pl.'s Resp. at 21 ("The new law ... does limit rating only to disabilities rendering the service member unfit in and of themselves."). The court believes this concession applies with equal force to the 1994 statute because, in substance, the statute did not change with respect to the singularity of disability referred to.

5. Writing in the apparent absence of legislative history on point, editors of the USCA's historical and statutory notes describe the 1996 amendments as "restructured provisions," suggesting a view that the subsections were created to clarify the content that was already in place prior to the amendment. *See* Historical and Statutory Notes to 10 U.S.C.A. § 1201 (West 1998). An interpretation of the amendment as clarifying seems especially likely in view of the fact that Army Regulation (Army Reg.) 635–40 reflected a concept of rating only unfitting disabilities both before and after the 1996 amendment.

court found the Army's fitness determination arbitrary and capricious, it did so because it found that the Correction Board failed to give the report *any* weight and because "there [was] no reference, comment, or discussion … concerning the … VA evaluation." *Jordan,* 205 Ct.Cl. at 80. *See also Pomory v. United States,* 39 Fed.Cl. 213, 219 (1997) (finding that the Army's decision to give little weight to the VA determination would not be arbitrary or capricious in light of the different purposes for the Army and VA evaluation). The Correction Board here acknowledged the VA rating and addressed it. AR at 6, 9.

4. Whether the Board's decision not to rate plaintiff's shoulder and psychological injuries violated Army Reg. 635–40

■ Plaintiff contends that the Army's refusal to rate plaintiff's disability of the upper back and shoulders as well as his mental condition of dysthymia with depressed mood was erroneous. Pl.'s Resp. at 20. The Army declined to rate these injuries because they were not "unfitting conditions" in and of "themselves nor were they viewed as contribut[ing] to unfitness." AR at 9. Plaintiff argues that this decision was contrary to Army Reg. 635–40. Pl.'s Resp. at 19–21.

Plaintiff and defendant agree that the applicable version of the Army Reg. 653–40 is the one which went into effect on September 15, 1990 and was provided by defendant in Appendix B to its dispositive motion. The relevant language of Section 3–5 of Army Reg. 635–40 entitled "Use of the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD)" states:

Only the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability. Any non-ratable defects or conditions will be listed in item 8 of DA Form 199, but will be annotated as non-ratable.

Army Reg. 635–40, Physical Evaluation for Retention, Retirement, or Separation, dated September 15, 1990. This language makes it clear that the Army considers rating only those conditions and defects that are either "unfitting conditions" or "contribute to unfitness." *Id.* Additional support for this interpretation is found in the Summary of Changes to Army Reg. 635–40 issued when it first became effective in 1990. The court's textual approach to the interpretation of this regulation is supported by the Summary of Changes which states, "This revision [p]rohibits rating disabilities which are neither unfitting nor contribute to the physical unfitness of a soldier." *See* Appendix B to Def.'s Mot. at 2.

The language of the regulation creates two categories of conditions and defects—ratable and non-ratable. It instructs that only "unfitting conditions or defects" or those that "contribute to" unfitness are ratable. *See* Army Reg. 635–40. Plaintiff argues that the words *"contribute to* unfitness" required "the Army to make a determination whether the shoulder injury contributed to overall unfitness" even if the injuries were not unfitting in and of themselves. Pl.'s Supp. Brief at 6.

The court agrees with plaintiff that the Army was required to determine whether the shoulder and psychological injuries contributed to plaintiff's unfitness when it decided not to rate those injuries. However, the court will not second guess the Army's application of its own regulations absent clear error or abuse of discretion. *See Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704, 707–08 (1980) (recognizing the "presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith."); *see also Champagne v. United States,* 35 Fed.Cl. 198, 208 (1996) (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)) ("[The] court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ….'"). The Board's actions appear to have addressed the evidence in a manner consistent with and supported by the relevant statute and defendant's own regulations.

Here, the Board repeatedly articulated the proper legal standard and stated that it considered all of the evidence. *See, e.g.,* AR at 8

("[C]onditions which do not render a soldier unfit for military service will not be considered in determining the compensable disability rating unless the conditions contribute to the finding of unfitness."). The Board concluded:

Considering all the evidence, allegations, and information presented by the applicant, together with the evidence of the record, applicable law and regulations and advisory opinions, it is concluded:

1. Notwithstanding the presence, or possible presence, of various other medical conditions, the applicant was found physically unfit for further military service solely because of his back condition. No other medical condition was in itself unfitting or contributed to the finding of unfitness.

AR at 9. Because the Board articulated the correct legal standard and stated that it considered all of the evidence, the court cannot say the Board's decision was contrary to law. Having determined that the Board's approach was not contrary to the applicable statute and regulation, however, the court must now addresses whether the Board's determination was arbitrary or capricious or unsupported by substantial evidence.

5. Whether the Board's determination not to rate shoulder and psychological injuries was supported by substantial evidence

▆▆▆ The standard of review does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence. *Heisig*, 719 F.2d at 1157. Under the substantial evidence standard, "*all* of the competent evidence must be considered, whether original or supplemental." *Id.* "Substantial evidence is defined as 'more than a mere scintilla.'" *Thomas v. United States*, 47 Fed.Cl. 560, 569 (2000). Substantial evidence is "'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. Labor Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Jennings v. Merit Sys. Prot. Bd.*, 59

F.3d 159, 160 (Fed.Cir.1995); *Heisig*, 719 F.2d at 1156.

Plaintiff bears the burden of showing that the Board's action was arbitrary or capricious or unsupported by substantial evidence. *Wronke*, 787 F.2d at 1576. To prevail under the arbitrary and capricious standard, plaintiff must demonstrate that evidence was ignored or unreasonably construed. *Thomas*, 47 Fed.Cl. at 569. The Board decision "'may also be reviewed for failure to correct an alleged injustice where factual, rather than legal, error has been committed by the military and the error is so shocking to the conscience that boards' [sic] failure to correct it rises to the level of legal error.'" *Thomas*, 47 Fed.Cl. at 570 (quoting *Dodson v. United States*, 988 F.2d 1199, 1204 n. 6 (Fed.Cir. 1993)).

Plaintiff argues that the Army's refusal to rate plaintiff's upper back and shoulders was unsupported by substantial evidence. Pl.'s Resp. at 20. However, a "refusal to rate" is not the same as ignoring evidence. Plaintiff points to no evidence that was ignored or unreasonably construed with respect to the Board's decision to not rate these injuries. Plaintiff's disagreement with the rationale behind the decision is not enough to satisfy the substantial evidence standard.

In addition to the failure to rate the upper back and shoulders, plaintiff alleges that various other Army medical determinations were unsupported by substantial evidence. Pl.'s Resp. at 16–21. However, all of the medical evidence referenced in plaintiff's briefing was before the PEB or the USAPDA and reviewed by the ABCMR. *See generally id.* at 16–25. As defendant points out, all of the medical facts that plaintiff points to were raised throughout the course of the extensive evaluation process afforded plaintiff. Plaintiff was treated and evaluated by three separate MEBs; plaintiff was afforded both an informal PEB and a formal PEB. Plaintiff then reasserted his arguments for greater disability in a lengthy rebuttal statement to the PEB. *Id.* at 10. The president of the PEB promptly responded and addressed each of plaintiff's contentions.[6] Defendant's Reply at 10–11.

---

6. Plaintiff alleges that the PEB president failed to

address positive findings of X-rays, C–T scans

The case was then forwarded to the U.S. Army Physical Disability Agency (USAPDA) for further processing. *Id.* at 11. Plaintiff attempted to submit a new medical evaluation to the USAPDA for further consideration, but USAPDA declined to accept the additional evidence because the physician did not recommend reopening the MEB. *Id.* Even if the court disagreed with the USAPDA's decision not to accept this additional evidence, the USAPDA's reliance on the physician's recommendation was a reasonable and rational basis for its decision and in light of the standard of review, this court cannot find that its decision was unsupported by substantial evidence. Nor has plaintiff submitted any evidence that the physician's recommendation was so erroneous that the USAPDA's reliance on that recommendation rose to the level of legal error. *See Thomas,* 47 Fed.Cl. at 570. The USAPDA properly reviewed the case for error or injustice and found none. *Id.* at 12. The ABCMR then considered the evidence generated by the multiple medical evaluations. *Id.* at 12–13.

In an analogous circumstance applying the substantial evidence rule, the Federal Circuit upheld the district court's decision that the Board's conclusions were supported by substantial evidence despite the existence of significant contrary evidence. *Heisig,* 719 F.2d at 1157. The Federal Circuit stated:

> [T]here is no indication that the board ignored the governing regulations, or acted upon unsubstantial evidence, or both. The district court found substantial evidence to support the critical central administrative finding that, notwithstanding the fully presented medical problems, appellant was fit for duty.... Nor can it be said that Heisig's application received less than adequate consideration. His application has been considered and reconsidered at every level of the several reviews he has received.

*Heisig,* 719 F.2d at 1157.

The court can find no evidence or fact properly put before the ABCMR that was overlooked or ignored. The Board properly stated the legal standard and stated that it carefully considered all of the evidence that was before the PEB. The court does not believe, in light of *Heisig,* that the Board was required separately to itemize all of the medical evidence that was before the PEB and USAPDA. It is sufficient that the Board addressed the evidence and articulated and applied the correct legal standard. It is true that the Board found no error that some conditions were not rated or assigned a higher rating despite some medical evidence. Finding certain medical evidence unpersuasive is not the same as ignoring evidence. The court finds that the Board's decision not to rate certain of plaintiff's medical conditions was neither arbitrary nor capricious.

III. Conclusion

For the foregoing reasons, the court finds that the ABCMR's decision was proper. Defendant's motion for judgment on the administrative record is GRANTED. The Clerk of the Court is directed to enter judgment for defendant. No costs.

IT IS SO ORDERED.

---

and MRIs demonstrating direct nerve root impingement—evidence that plaintiff argues satisfied the required "objective evidence" to demonstrate neurological involvement. Pl.'s Resp. at 24. The mere existence of some contrary evidence does not constitute reversible error. *Heis-*

*ig,* 719 F.2d at 1157. The Board's opinion discusses the evidence it looked at in making its decision with respect to neurological involvement. AR at 3–5. The court cannot say the determination is irrational or unsupported by substantial evidence.