David G. DeBATTO, Plaintiff,

v.

UNITED STATES, Defendant.

No. 08–730C.

United States Court of Federal Claims.

May 28, 2009.

Michael D. Eisenberg, Law Office of Michael D. Eisenberg, Washington, D.C., for plaintiff.

Shari A. Rose, Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the brief were Michael F. Hertz, Acting Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Major Joshua M. Toman, U.S. Army Litigation Division, Military Personnel Branch, Arlington, Va.

## OPINION AND ORDER

LETTOW, Judge.

In this military disability case, David G. DeBatto, a former Staff Sergeant ("SSG") in the United States Army, contests his disability rating as established by the Army's disability-evaluation process. Mr. DeBatto served on active duty in the United States Army from June 19, 1978 to June 19, 1981, was with the reserves first from June 1981 through June 1985 and then from January 1990 through January 1993, and thereafter enlisted in the Massachusetts National Guard in April 2002. AR 21–129 (Army Personnel File); *see also* AR 16–45 to 46 (Letter from Stephen Raymond, SSG DeBatto's counsel, to President, Physical Evaluation Board ("PEB") (Mar. 25, 2004)).[1] He was recalled to active duty with his unit on February 27, 2003 for service in Iraq. AR 16–51 (Letter from SSG DeBatto to PEB (Mar. 17, 2004)); *see also* AR 17–53 (Certificate of Release or Discharge from Active Duty (Feb. 26, 2004)). During his latest tenure in the Army, Mr. DeBatto served as a Staff Sergeant with a counter-intelligence unit. AR 16–45 to 46

(Letter from Raymond to President, PEB). After suffering injuries as a result of a vehicle crash while on a combat mission in Iraq, then-SSG DeBatto was awarded a 20 percent disability rating and honorably discharged from the Army. AR 10–30 to 31 (Authorization for Physical Disability Separation (Sept. 30, 2004)); AR 1–1 (Discharge (Dec. 22, 2004)). He claims that he is entitled to a higher disability rating, which would result in his receipt of additional benefits from the Army. *See* Hr'g Tr. 30:10–17 (May 1, 2009).

Mr. DeBatto contends that the Army's decision to rate his disability at 20 percent is arbitrary and capricious and not supported by substantial evidence. Pl.'s Opp'n to Def.'s Mot. To Dismiss, or, in the Alternative, Mot. for Judgment upon the Administrative Record at 5 ("Pl.'s Cross–Mot."). The government initially challenged the court's jurisdiction to entertain Mr. DeBatto's claims regarding his disability rating and the Army's disability process, and it also argued that Mr. DeBatto had waived his right to judicial review of his claims. Def.'s Mot. to Dismiss, or, in the Alternative, Mot. for Judgment upon the Administrative Record at 7, 10 ("Def.'s Mot."). However, those contentions have been withdrawn. Hr'g Tr. at 11:6–10. The government nonetheless has maintained its position that Mr. DeBatto's claim is not supported by the administrative record. Def.'s Mot. at 14; Hr'g Tr. 11:10–11. The competing motions have been fully briefed and a hearing was held on May 1, 2009. The case is accordingly ready for disposition.

## FACTS[2]

Mr. DeBatto enrolled in the Army's Delayed Entry Program on December 19, 1978. AR 21–129 (Army Personnel File). On June

---

1. "AR___" refers to the administrative record filed with this court in accordance with Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). The first number in a citation to the administrative record refers to a particular tab, and the number after the hyphen refers to the particular page number within that tab, e.g., "AR 8–395." The pages of the administrative record are paginated sequentially without regard to the tabs.

2. The recitation of facts is drawn from the Administrative Record. *See Santiago v. United States*, 75 Fed.Cl. 649, 653 (2007) ("*Santiago II*") ("In accord with RCFC 52. 1, the court 'is required to make factual findings ... from the [administrative] record as if it were conducting a trial on the record.'" (quoting *Acevedo v. United States*, 216 Fed.Appx. 977, 979 (Fed.Cir.2007))).

19, 1979, Mr. DeBatto enlisted for active duty with the Army and remained on active duty until June 19, 1981. *Id.* From the date Mr. DeBatto left active service through June 12, 1985, he served in the United States Army Reserves Control Group (Reinforcement). *Id.* In January 1990, Mr. DeBatto reenlisted with the United States Army Reserves Troop Program Unit and served in the Army Reserves through January 19, 1993. *Id.*

In April 2002, Mr. DeBatto enrolled in the Massachusetts Army National Guard. AR 16–51 (Letter from DeBatto to PEB). In February 2003, his unit was deployed to Iraq where it was stationed in the Sunni Triangle. *Id.* Mr. DeBatto "was made a Team Leader of a Tactical Humint [Human Intelligence] Team." *Id.* While returning from a mission, the vehicle in which he was riding "was forced off the road" by an oncoming gravel truck. *Id.* With the resulting crash into a concrete embankment, SSG DeBatto was injured and received emergency medical care. *Id.;* AR 21–115 (Emergency Care and Treatment (May 25, 2003)).

Within a month following the accident, Mr. DeBatto began to "experienc[e] pain in his lower back, hips, and hands, as well as headache[s] and fatigue." AR 16–46 (Letter from Raymond to President, PEB); *see* AR 18–99 (Mem. for Commander from Victor Artiga, CPT, MI Commander (Sept. 6, 2003)). Mr. DeBatto was examined by physicians in an effort to determine the source of his ailments, and received physical therapy and pain medication. AR 18–99 to 100 (Mem. for Commander from Artiga). This treatment regimen proved to be ineffective. *Id.* When Mr. DeBatto's doctors conducted an MRI they discovered that he had experienced "degenerative changes in his cervical and lumbar

vertebrae." AR 18–95 (Mem. from Dr. Thomas G. Eccles, Flight Surgeon (Sept. 25, 2003)). Dr. Eccles recommended that Mr. DeBatto be redeployed to the United States for the Army "to initiate a medical evaluation board." *Id.*[3]

Following his redeployment to the United States, Mr. DeBatto was examined by a rheumatologist. AR 16–46 (Letter from Raymond to President, PEB). The examination revealed that Mr. DeBatto was suffering from "[p]ost[-][t]raumatic [f]ibromyalgia secondary to spinal shock due to the trauma suffered during war action in Iraq." *Id.*[4] Additionally, in preparation for the MEB's review of his case, Mr. DeBatto was examined by a psychiatrist who determined that Mr. DeBatto "had no AXIS I or AXIS II diagnosis." AR 16–56 (Mem. by Dr. Mary E. Gabriel, MEB Physician (Feb. 20, 2004)).

The MEB found that Mr. DeBatto suffered from "[p]ost[-]traumatic fibromyalgia," "[h]ypercholesterolemia," "[n]eck pain due to degenerative disc disease," and "[b]ack pain due to lumbar degenerative joint disease." AR 20–116 (MEB Proceedings (Feb. 23, 2004)). The MEB concluded that Mr. DeBatto's fibromyalgia was the only condition from which he suffered that would warrant separation or retirement and decided that the case should be referred to a PEB. *Id.; see* Army Regulation 635–40, §§ 4–10, 4–13 (stating that a MEB should not refer a service member to a PEB "unless the Soldier has medical impairments that raise substantial doubt as to . . . her ability to continue to perform the duties of her . . . office, grade, rank, or rating").[5] Mr. DeBatto signified his agreement with the MEB's analysis and recommendation to forward his case to a PEB.

---

**3.** A Medical Evaluation Board ("MEB") is "convened to document a Soldier's medical status and duty limitations insofar as duty is affected by the Soldier's status.... If [a] MEB determines the Soldier does not meet retention standards, the board will recommend referral of the Soldier to a [Physical Evaluation Board]." Army Regulation 635–40, § 4–10. The PEB will determine if the service member should be separated or retired from the Army because of disability. *Id.; see also Santiago v. United States,* 71 Fed.Cl. 220, 222–23 n. 3 (2006) ("*Santiago I*").

**4.** Fibromyalgia is "widespread musculoskeletal pain and tender points with symptoms." Hr'g Tr. 10:10–11.

**5.** A PEB "is a fact-finding board" that is charged with investigating a service member's disability, "[e]valuating the physical condition of the Soldier against the physical requirements of the Soldier's particular office, grade, rank, or rating," "[p]roviding a full and fair hearing," and making the necessary findings and recommendations to determine whether a service member should be separated or retired because of disability. Army Regulation 635–40, § 4–17.a.

AR 20–117 (MEB Proceedings) ("I agree with the board's findings and recommendation.").

After the MEB's decision, Mr. DeBatto was separated from active duty but not discharged from the service. Hr'g Tr. 16:22–25. Mr. DeBatto's separation from the Army entitled him to seek assistance from the Department of Veterans Affairs. Hr'g Tr. 17:4–6; *see* 38 U.S.C. § 1110 (stating that "the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter"). Somewhat unusually, Mr. DeBatto thus was able to proceed nearly simultaneously through the Army's and the Department of Veterans Affairs' disability evaluations. Hr'g Tr. 48:20–25.

The informal PEB [6] evaluated Mr. DeBatto's condition and concluded "that [Mr. DeBatto's] medical condition prevent[ed] performance of duty in [his] grade and speciality." AR 14–42 (DA Form 199, PEB Proceedings (Apr. 3, 2005)). The informal PEB recommended that Mr. DeBatto be assigned a disability rating of 20 percent for fibromyalgia. *Id.* A 20 percent disability rating for fibromyalgia entails symptoms that "are episodic, with exacerbations often precipitated by environmental or emotional stress or by overexertion, but that are present more than one-third of the time." 38 C.F.R. § 4.71a. The informal PEB concluded that Mr. DeBatto's other ailments were not disqualifying, and thus they were not assigned a disability rating. AR 14–42 (DA Form 199, PEB Proceedings). Based on its findings, the informal PEB concluded that separation was required and that Mr. DeBatto was entitled to "severance pay in lieu of retirement." *Id.*

After receiving the informal PEB's decision, Mr. DeBatto elected not to concur with

the decision and appealed the result but waived a formal PEB hearing. AR 14–43 (Election of Soldier on DA Form 199, PEB Proceedings). Mr. DeBatto retained counsel, Stephen Raymond, to represent him on the appeal. *See* AR 16–45 (Letter from Raymond to President, PEB). Mr. DeBatto challenged both the informal PEB's determination that his fibromyalgia entitled him to a disability rating of only 20 percent and the board's failure to consider Mr. DeBatto's degenerative joint and disc diseases. *Id.* Mr. DeBatto's appeal was denied on the grounds that "the rebuttal contained no new substantive medical information" and the other medical conditions from which he suffered "were found by the medical evaluation board to be not disqualifying." AR 15–44 (Appeal of PEB Informal Proceeding (Mar. 25, 2004)). Mr. DeBatto was informed that his "entire case file" was being "forwarded to the U.S. Physical Disability Agency" and that he should also contact the Department of Veterans Affairs. *Id.*

Before the Army Physical Disability Board, Mr. DeBatto, through counsel, reiterated the arguments that he had made on appeal to the PEB. *See* AR 13–38 to 39 (Letter from Raymond to Army Physical Disability Board (Apr. 27, 2004)). The Army Physical Disability Board affirmed the decision of the PEB, AR 12–36 (Letter from Physical Disability Agency to Raymond (May 11, 2004)), determining that a 20 percent disability rating for Mr. DeBatto's fibromyalgia was appropriate because, "[a]lthough treatment and therapy have not cured [Mr. DeBatto] of his condition, these actions do positively affect it and the results cannot be described as non[-] responsive." *Id.* Additionally, the Physical Disability Board concluded that Mr. DeBatto's "back/neck conditions ... were not medically disqualifying." *Id.*

After a delay, Mr. DeBatto was discharged from the Army. Hr'g Tr. 15:22–24. Mr. DeBatto's initial discharge order indicated that he had not suffered a combat related injury,

---

6. An informal PEB is convened to evaluate a service member's disability claim when a case is referred from an MEB. Army Regulation 635–40, § 4–20.a. The informal PEB is designed to "reduce the overall time required to process a case

through the disability evaluation system." *Id.* The informal PEB uses the same criteria and guidelines in evaluating a service member's disability as would a formal PEB. *Id.*

and he requested that the discharge show that he had suffered such an injury. AR 3–3 (Letter from DeBatto to Army Physical Disability Branch (Nov. 3, 2004)). The Army consented to Mr. DeBatto's desired change to his discharge order, AR 3–5 (Army Physical Disability Agency (Oct. 21, 2004)), and Mr. DeBatto was discharged from the Army National Guard and as a reserve of the Army, effective December 12, 2004. AR 1–1 (Discharge).

Contemporaneously, the Department of Veterans Affairs evaluated Mr. DeBatto's physical condition and assigned different disability ratings, despite using the same criteria as the informal PEB. Hr'g Tr. 13:17–24. On October 8, 2004, the Department of Veterans Affairs assigned a ten percent disability rating for Mr. DeBatto's fibromyalgia, a ten percent disability rating for his "[d]egenerative arthritis/degenerative disc disease of cervical spine," and a ten percent disability rating for post head trauma. Supp. AR 8–9 (Department of Veterans Affairs (May 24, 2005)).[7] Mr. DeBatto appealed the Department of Veterans Affairs' initial disability ratings. Supp. AR 10 (Review Officer's Decision (Apr. 13, 2005)). Based upon a medical examination conducted on February 7, 2005, the Review Officer determined that Mr. DeBatto's fibromyalgia should be assigned a 40 percent disability rating, Supp. AR 13, and affirmed the ten percent disability rating for post head trauma. Supp. AR 14. Additionally, the Review Officer increased Mr. DeBatto's disability rating for "degenerative arthritis/degenerative disc disease" to 20 percent, Supp. AR 13–14, and also determined that Mr. DeBatto was suffering from post-traumatic stress disorder and assigned him a

50 percent disability rate for this condition. Supp. AR 12. The Department of Veterans Affairs assigned Mr. DeBatto an 80 percent overall disability rating. Supp. AR 9 (Department of Veterans Affairs).[8]

Mr. DeBatto filed a complaint in this court on October 15, 2008.

## STANDARDS FOR DECISION

Before a federal court can reach the merits of a case, its jurisdiction over the matter in controversy must be established. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). As plaintiff, Mr. DeBatto bears the burden of establishing by a preponderance of the evidence that this court has subject matter jurisdiction over his claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *see also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In ascertaining whether subject matter jurisdiction over a dispute exists, this court must accept as true all facts asserted in plaintiff's complaint and "draw all reasonable inferences" in favor of the plaintiff. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995). The factual allegations contained in plaintiff's complaint "must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed.Cir.2009).

In adjudicating military disability cases, this court has a limited role. *See Santiago I,*

---

7. During the proceedings in this case, plaintiff moved to supplement the administrative record with documents generated before the Department of Veterans Affairs. The government filed no response to this motion, and at the hearing on the case, the government's counsel stated that the government had no objection to the motion. Hr'g Tr. 43:14–21. Plaintiff's motion to supplement will thus be granted, and the supplemental record will be designated as "Supp. AR ——."

All of the Department of Veterans Affairs' disability ratings are retroactive to the day after Mr. DeBatto's separation unless otherwise noted.

8. Mr. DeBatto's initial disability ratings from the Department of Veterans Affairs did not include a

rating for post-traumatic stress disorder. *See* Supp. AR 8 (Department of Veterans Affairs). When Mr. DeBatto was initially examined by the Department of Veterans Affairs, "[t]he examiner diagnosed acute post-traumatic stress disorder of moderate severity." Supp. AR 12 (Review Officer's Decision). On March 26, 2007, the Department of Veterans Affairs increased Mr. DeBatto's disability rating for post-traumatic stress disorder to 70 percent. Supp. AR 18 (Department of Veterans Affairs (Sept. 28, 2007)). The 70 percent disability rating was not retroactive to the date of Mr. DeBatto's separation. *Id.*

71 Fed.Cl. at 226. "It has long been established that it is 'beyond the institutional competence of courts to review' the substance of decisions that have been left exclusively to the discretion of the military." *Roth v. United States,* 56 Fed.Cl. 239, 244 (quoting *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002)); *see also Groves v. United States,* 47 F.3d 1140, 1144 (Fed.Cir.1995). "It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir. 1983); *see also Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979) (stating that in reviewing military cases this court does not sit as "a super correction board"). The decision of a military disability evaluation board is examined by this court to determine whether it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States,* 417 F.3d 1218, 1227 (Fed.Cir.2005); *see also Fisher v. United States,* 402 F.3d 1167, 1180–81 (Fed.Cir.2005); *Heisig,* 719 F.2d at 1156. The standard of review applied by this court in military disability cases "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig,* 719 F.2d at 1157.

Mr. DeBatto "bears the burden of establishing by 'cogent and clearly convincing evidence'" that the Army's decision is not supported by substantial evidence. *Colon v. United States,* 71 Fed.Cl. 473, 484 (2006) (citing *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986)), *aff'd sub nom. Acevedo v. United States,* 216 Fed.Appx. 977 (Fed.Cir. 2007). In reviewing a decision under the substantial evidence rule, "*all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." *Heisig,* 719 F.2d at 1157.

## ANALYSIS

### A. *Subject Matter Jurisdiction*

■ The Tucker Act provides this court with "jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Tucker Act, standing by itself, is insufficient to vest this court with jurisdiction. *See, e.g., United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Martinez v. United States,* 333 F.3d 1295, 1302–03 (Fed. Cir.2003) (en banc). The Tucker Act serves as a waiver of the United States' sovereign immunity for certain claims that " 'can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment for the damage sustained.'" *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. 948); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) ("[A] fair inference will do.").

In the instant case, plaintiff's complaint cited the Tucker Act as providing this court with jurisdiction to adjudicate Mr. DeBatto's claims. Compl. ¶¶ 2, 4. The government initially contested this court's jurisdiction over those claims, Def.'s Mot. at 7, referring to plaintiff's failure to cite the fact that his claims for disability retirement benefits fall within the ambit of 10 U.S.C. § 1201. Section 1201 provides that if the Secretary concludes that a service member is "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay ... the Secretary may retire the member." 10 U.S.C. § 1201(a). The Federal Circuit has repeatedly held that Section 1201 is money-mandating. *See Chambers,* 417 F.3d at 1223–24 (citing *Fisher,* 402 F.3d at 1174–75); *Sawyer v. United States,* 930 F.2d 1577, 1580 (Fed.Cir.1991) (holding that Section 1201 is money-mandating and that when the terms of the statutory provision are met the service member is entitled to receive compensation). Based upon Section 1201, Mr. DeBatto can challenge both his final disability rating and the procedures the Army used in making that determination. *See Chambers,* 417 F.3d at 1224–28; *Santiago I,* 71 Fed.Cl. at 228.

Recognizing the futility of maintaining its jurisdictional argument, the government withdrew that aspect of its motion to dismiss at the hearing in this case. Hr'g Tr. 11:6–10.

### B. *Waiver*

■ The government also initially contended that Mr. DeBatto's complaint should be dismissed on the ground that he waived his right to judicial review of his 20 percent disability rating and the process that led to that rating when he elected to waive a formal PEB hearing. Def.'s Mot. at 10. In support of this contention, the government cited the Federal Circuit's decision in *Gant v. United States*, 417 F.3d 1328 (Fed.Cir.2005), for the proposition that a service member "who knowingly and voluntarily accepts his disability rating waives the right to any further review." Def.'s Mot. at 11 (citing *Gant*, 417 F.3d at 1330). At the time Mr. DeBatto waived a formal PEB hearing, however, he indicated his disagreement with the result of the informal PEB hearing by appealing that result to the PEB. *See supra*, at 5 (discussing AR 14–43 (Election of Soldier on DA Form 199, PEB Proceedings)). In the circumstances, there was no waiver. Here again, at the hearing on the competing cross-motions, the government informed the court that it was withdrawing its argument that Mr. De-Batto had waived judicial review of his claims. Hr'g Tr. 11:9–10. Consequently, the government's motion to dismiss will be denied.

### C. *The Army's Disability Process and Rating*

■ On the merits, Mr. DeBatto contends that the Army's disability process and his resulting disability rating were "arbitrary, capricious and unsupported by substantial evidence." Pl.'s Cross–Mot. at 5. He supports this contention by referring to the disability ratings assigned to him by the Department of Veterans Affairs. *Id.* at 6. Specifically, Mr. DeBatto contends that "the Army['s] 20 [percent] rating for [f]ibromyalgia should have been in concert with the VA['s] rating of 40 [percent] for [f]ibromyalgia" and that the Army failed to diagnose and assign a disability rating for his posttraumatic stress disorder. *Id.*

Both parties in principle acknowledge that the disability ratings by the Department of Veterans Affairs could be relevant evidence in a case of this type; however, they disagree whether the disability ratings ultimately assigned by the Department of Veterans Affairs have a material bearing on Mr. DeBatto's claim. *Compare* Def.'s Mot. at 18, *with* Pl.'s Cross–Mot. at 7. This dispute centers on timing. The government contends that the Department of Veterans Affairs' disability ratings should be accorded limited or no weight "because [they are] too remote in time to accurately reflect Mr. DeBatto's condition at the time of his separation." Def.'s Mot. at 18. Mr. DeBatto asserts that because the Department of Veterans Affairs made his disability ratings for fibromyalgia and post-traumatic stress disorder retroactive to the day after his separation, those ratings are probative evidence and demonstrate the arbitrary and capricious nature of the Army's disability determination. Pl.'s Cross–Mot. at 7–8.

Mr. DeBatto's challenge to the Army's decision to assign his fibromyalgia a 20 percent disability rating rests solely on the fact that the Department of Veterans Affairs assigned a 40 percent disability rating for that condition. Pl.'s Cross–Mot. at 6. This contention suffers from two significant flaws. First, it ignores that "[t]he Army uses the [Veterans Administration Schedule for Rating Disabilities] to determine fitness for performing the duties of office, grade, and rank, whereas the VA uses the [Veterans Administration Schedule for Rating Disabilities] to determine disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world." *Haskins v. United States*, 51 Fed.Cl. 818, 826 (2002). Because the Army's and the Department of Veterans Affairs' disability ratings serve different purposes, it is well established that "[a] Veterans Administration [disability] rating determination is not binding on the Army." *Id.*

Secondly, evidence from the Department of Veterans Affairs supports the Army's 20 percent disability rating. On April 13, 2005, the officer of the Department of Veterans Affairs responsible for reviewing Mr. DeBat-

to's case assigned Mr. DeBatto a 40 percent disability rating for fibromyalgia. Supp. AR 13. However, on October 8, 2004, the Department initially assigned Mr. DeBatto's fibromyalgia a ten percent disability rating. *See* Supp. AR 8. The Review Officer decided to increase Mr. DeBatto's fibromyalgia rating based upon results from a medical examination conducted on February 7, 2005, almost a year after his separation from the Army. Supp. AR 13. As a result, the records from the Department of Veterans Affairs do not establish that the Army's decision to assign Mr. DeBatto a disability rating of 20 percent was arbitrary and capricious. Instead, the disability ratings by the Department of Veterans Affairs tend to indicate that Mr. DeBatto's fibromyalgia worsened after his separation and discharge from the Army, even though the Department of Veterans Affairs' rating for fibromyalgia was made retroactive to the day after Mr. DeBatto's separation from the Army. Therefore, Mr. DeBatto's challenge to the disability rating assigned by the Army to his fibromyalgia is unavailing.

■ Mr. DeBatto's contentions based on the failure of the Army to rate his post-traumatic stress disorder also are not well founded. Here also, Mr. DeBatto's arguments are premised on the Department of Veterans Affairs' decision to award a 50 percent disability rating for post-traumatic stress disorder, retroactive to the day after his separation from the Army. Pl.'s Cross-Mot. at 6–7. Mr. DeBatto claims that the Army improperly failed to assign his post-traumatic stress disorder a disability rating, Hr'g Tr. 31:22 to 32:3, and instead "simply ignore[d] the problem, [ ] hop[ing] it [would] go away." Hr'g Tr. 33:2–4. In response, the government emphasizes that Mr. DeBatto was given a psychiatric evaluation by the Army prior to December 18, 2003, and the evaluator determined that Mr. DeBatto was not suffering from post-traumatic stress disorder. Def.'s Reply at 5; AR 18–56 (Mem.

by Dr. Mary Gabriel, MEB Physician). Additionally, the government contends that Mr. DeBatto is barred from relief on this aspect of his claim because he failed to bring the issue of post-traumatic stress disorder to the Army's attention during the PEB's proceedings despite being represented by counsel during the PEB appeal. Hr'g Tr. 21:1–17.

In determining whether Mr. DeBatto had a disqualifying disability, the Army required Mr. DeBatto to see a psychiatrist, which examination probably occurred in December 2003 and certainly occurred before February 2004. *See* AR 18–55 to 56 (Mem. by Dr. Mary Gabriel, MEB Physician). Mr. DeBatto's psychological evaluation revealed "that he had no AXIS I or AXIS II diagnosis." *Id.*[9] The Department of Veterans Affairs' rating for post-traumatic stress disorder was based upon a later, independent evaluation, in which Mr. DeBatto was subjected to a series of neuropsychological tests on August 9, 2004. Supp. AR 11 (Review Officer's Decision). Those tests indicated that Mr. DeBatto may have been suffering from post-traumatic stress disorder. *Id.* However, despite these indications, the Department of Veterans Affairs did not initially assign Mr. DeBatto a disability rating for post-traumatic stress disorder, *see* Supp. AR 8, but rather it assigned Mr. DeBatto a 50 percent disability rating for post-traumatic stress disorder only after the Review Officer submitted his April 13, 2005 decision. *See* Supp. AR 10 (Review Officer's Decision).

The Army's psychological examination of Mr. DeBatto forecloses his argument that the military sought to ignore potential mental health problems that he may have had. Mr. DeBatto focuses on the absence of the psychological evaluation in the record and avers that a service member typically is "give[n] a fairly detailed list of the various ax[ ]es and what issues he may or may not have." Hr'g

---

9. Post-traumatic stress disorder is classified as an Axis I diagnosis. Hr'g Tr. 19:23–24. Unfortunately, the administrative record is barren of any details in this respect. The MEB physician's memorandum states that the psychological evaluation "is attached," AR 16–56 (Mem. by Dr. Mary Gabriel, MEB Physician), but no such attachment appears in the record. However, to

some extent, the Army's psychological evaluation is supported by the records of the Department of Veterans Affairs. The Review Officer's decision states that Mr. DeBatto's "[s]ervice medical records show no overt evidence of post-traumatic stress disorder." Supp. AR 11 (Review Officer's Decision).

## 180

Tr. 28:2–8. In part, however, the cryptic state of the record in this regard is due to decisions made by Mr. DeBatto in consultation with his prior attorney. During his evaluations by the Army, Mr. DeBatto never articulated suffering from any of the symptoms associated with post-traumatic stress disorder, *see* AR 18–99 to 101 (Mem. for Commander, Request for Medical Evaluation and Treatment for Staff Sergeant DeBatto (Sept. 6, 2003)); AR 18–55 to 58 (Mem. by Dr. Mary Gabriel, MEB Physician), and he did not raise the matter during the PEB appeal. Additionally, Mr. DeBatto elected to waive a formal PEB hearing, thereby foreclosing a further opportunity to develop a more comprehensive record about his psychiatric state and the evaluation by the Army in 2003.

Based upon the evidence at hand in the administrative record, the court cannot find that the Army's failure to assign Mr. DeBatto a disability rating for post-traumatic stress disorder was arbitrary and capricious.

### CONCLUSION

For the reasons stated, the government's motion to dismiss is DENIED, but the government's motion for judgment on the administrative record is GRANTED. Plaintiff's cross-motion for judgment on the administrative record is DENIED.

The Clerk shall enter judgment for the government in accord with this decision. No costs.[10]

It is so ORDERED.

---

10. For the reasons stated *supra*, at 6 n. 7, Mr. DeBatto's motion for supplementation of the administrative record to include records of the contemporaneously occurring disability proceedings before the Department of Veterans Affairs is GRANTED.